ROBERT WEITZE *vs.* HARRY L. BURRAGE & others.

Suffolk.    December 5, 1905. — January 10, 1906.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Equity Jurisdiction.   Corporation.*

A bill in equity by the holder of a voting trust certificate representing common stock in a corporation, to set aside a sale of the common stock or of the voting trust certificates representing it by a protective committee of the certificate

---

* See R. L. c. 177, § 34, cl. 12.

holders, in which a director who was the financial manager of the corporation has been made a defendant, cannot be maintained against such manager merely on an allegation that he mismanaged and crippled the business of the corporation so as to reduce the market value of the certificates and induce the protective committee to make the sale complained of, there being no allegation that the manager and the protective committee were acting in collusion to sell the stock below its value or for any other unlawful purpose, or that there was any concert between the manager and the purchaser of the stock, or that the manager had any interest in the purchase, the alleged fraud on the part of the manager not being connected in any way with the relief prayed for.

A bill in equity by the holder of a voting trust certificate representing common stock in a corporation, to set aside a sale of the common stock or of the voting trust certificates representing it by a protective committee of the certificate holders, alleged that a " pooling agreement," creating the protective committee and defining their powers, authorized that committee " to negotiate in behalf of the owners for the sale of the pooled stock, and . . . to agree to sell not less than two thirds of the pooled stock at such price as may be approved in writing by owners representing two thirds of the pooled stock," that the committee made an agreement, subject to the assent of the owners of the pooled stock, to sell all or at least not less than two thirds of the pooled stock at a certain price per share, that before executing this agreement the committee sent to the certificate holders a notice of the offer to purchase the stock, naming the price but not purporting to state, and not stating, all of the terms of the agreement, enclosing a card on which was printed an authorization of the sale of the stock by the committee at the price named, which was signed and returned by the plaintiff and the other certificate holders. There was no averment that the members of the committee were not ready to give or did not give full information as to the proposed sale to any certificate holder who desired it, and no averment that the price was inadequate or that it was below either the market value or the intrinsic value of the stock, or that a higher price could have been obtained from any other purchaser, or that the bargain was not an advantageous one for the stockholders, and the agreement, a copy of which was annexed to the bill, was not unreasonable upon its face. On demurrer, *held*, that the bill disclosed no ground for equitable relief.

BILL IN EQUITY, filed, as amended and substituted by consent and leave of court, on February 11, 1905, by Robert Weitze of Cambridge and such other holders of voting trust certificates of the common stock of John P. Squire and Company, a corporation, as might become parties thereto, against Harry L. Burrage and Russell A. Ballou of Newton, Edwin C. Swift of Beverly, the City Trust Company, a corporation, and Edward K. Hall and James S. Murphy of Boston, Edward P. Shaw of Newburyport, John G. Massie of Providence in the State of Rhode Island, and James M. Steadman of Portland in the State of Maine, constituting the protective committee of the pool of John P. Squire and Company common stock under a declaration or agreement of trust dated February 5, 1903.

The bill was brought to set aside a sale of voting trust certificates of the common stock of the John P. Squire and Company corporation made by the protective committee to the defendant Ballou by an agreement in writing dated October 30, 1903. The averments of the bill are described in the opinion. The prayers of the bill were as follows:

First. That the court should issue an injunction enjoining and restraining the defendant trust company from delivering the voting trust certificates to the protective committee, or to the defendant Ballou, or to their nominees until the further order of the court, and from paying over to the protective committee or to any person, until the further order of the court, the sum of $25,000 deposited with it under the agreement of sale, or any other sum of money which it had received on account of the pretended agreement of sale from the defendant Ballou or the defendant Swift or their attorney or agent.

Second. That the individual defendants comprising the protective committee should be enjoined and restrained from carrying out or attempting to carry out the pretended agreement of sale with the defendant Ballou, or with his nominee, or any agent or attorney of Ballou.

Third. That the pretended agreement of sale should be adjudged invalid and of no effect upon the rights of the plaintiff and other creditor stockholders, depositors under the protective committee agreement.

Fourth. That the defendant Burrage should be decreed to pay the costs of the suit.

Fifth. That such other and further relief might be granted to the plaintiff as justice and equity might require.

The agreement, called the pooling agreement, which created the protective committee and defined their powers was dated February 5, 1903. This agreement was signed by the members of the committee and by the owners of the voting trust certificates of the common stock of John P. Squire and Company. The fourth article of this agreement, which is referred to in the opinion, was as follows:

" 4. The committee is authorized to negotiate in behalf of the owners for the sale of the pooled stock, and is further authorized to agree to sell not less than two thirds of the pooled stock at

such price as may be approved in writing by owners representing two thirds of the pooled stock.

" Provided, however, the committee shall make no agreement to sell any part of the pooled stock which does not entitle all of the owners of the pooled stock to sell at the price authorized by the owners of two thirds of the stock as aforesaid.

" To such owners of pooled stock as do not in writing within ten days after notice from the committee signify their desire of selling their stock at the price authorized by the owners of two thirds of such stock as aforesaid, the committee shall send an order on the depositary, directing the return of such owner's stock upon surrender of his voucher therefor. Failure by any owner to notify the committee within ten days of his desire to sell his stock at the price authorized by the owners of two thirds of the pooled stock as aforesaid, shall be considered as a waiver of all rights under the provisions of this agreement."

The agreement of sale which the bill sought to set aside was as follows :

" Memorandum of Agreement between Russell A. Ballou, his successors or assigns, party of the first part, and Edward K. Hall, James S. Murphy, John G. Massie, E. P. Shaw, and James M. Steadman, their successors or assigns, hereinafter called the Committee, parties of the second part, and the City Trust Company of Boston, its successors or assigns, hereinafter called the Trust Company, party of the third part.

" Whereas there is deposited in the City Trust Company under the terms of a so-called pooling agreement, dated February 5, 1903, between said committee and various common stockholders of John P. Squire & Company, approximately twenty-eight thousand shares of the common stock of John P. Squire & Company, or certificates entitling the holders thereto, hereinafter referred to as stock, and,

" Whereas the said Ballou is ready to purchase all of said pooled stock, or any part thereof, not less than fifteen thousand shares, and,

" Whereas said committee is ready to sell to said Ballou at said price such part of said pooled stock as they may be lawfully authorized to sell under the terms of said pooling agreement;

" Now therefore in consideration of the premises and in the

further consideration of the mutual promises and agreements ' hereinafter set forth, the parties hereto agree as follows:

" 1. The said Ballou agrees to purchase all of said stock which the said committee may be authorized to sell, and pay therefor the sum of fourteen dollars ($14.00) per share, provided, however, that the said Ballou will not accept or purchase an amount of less than fifteen thousand shares. This offer is to remain open for acceptance by the committee until 6 P. M. November 3, 1903. If on or before said time the committee by writing delivered to said Ballou at No. 35 Federal street, in said Boston, notifies the said Ballou that they will sell and deliver, under the terms hereof, shares of said stock exceeding fifteen thousand shares in amount, this contract and all the terms thereof shall become binding upon the parties hereto, and the said Ballou agrees to accept and pay for the number of shares named in said writing, under the terms hereof.

" Said Ballou further agrees to accept and pay for, under the terms hereof, within twelve (12) days from said date, any part or all of the balance of said pooled stock which the committee may agree to sell within said twelve (12) days.

" The payments for stock agreed to be sold under the terms hereof shall be made to the City Trust Company as follows: Within twenty-four (24) hours after the total amount of stock to be delivered by the committee under the terms hereof shall have been ascertained and communicated to said Ballou at said address, in writing, the said Ballou shall deposit with the City Trust Company an amount of cash equal to $3.50 per share for all stock agreed to be delivered; a second payment of an amount equal to $3.50 per share shall be deposited with the City Trust Company thirty (30) days thereafter; a similar amount sixty (60) days thereafter, and a similar amount, or the final payment, shall be deposited ninety (90) days thereafter. Interest at five per cent. from the date of the first payment shall be added to the respective amounts deposited on the second, third and fourth payments.

" The said Ballou agrees to deposit with the City Trust Company, upon the execution of this agreement, the sum of twenty-five thousand dollars ($25,000). This amount is to be forfeited to the committee for the benefit of their depositors if the said

Ballou fails to make the first payment of $3.50 per share, as hereinabove provided; but if said payment is made in accordance with the terms hereof, said twenty-five thousand dollars ($25,000) shall be applied to and considered as a part of said payment. In case the committee fails to secure the necessary authority as aforesaid, to sell to the said Ballou under the terms hereof, any part of said pooled stock, then the trust company shall return said twenty-five thousand dollars ($25,000) to the said Ballou.

" In case there is a default of more than ten (10) days on the part of the said Ballou in making either the second, third or fourth payments, as hereinbefore set forth, the total amount of the first payment shall be forfeited to the committee for the benefit of their depositors, the balance of payments, if any, shall be returned to said Ballou, said Ballou shall forfeit all his right hereunder, and the trust company is authorized to pay over all moneys so forfeited to the committee.

" The said Ballou further agrees to pay to the committee on the date of the last payment, as hereinbefore set forth, a sum not to exceed thirteen hundred dollars ($1300), the expenses of the committee in connection with the said pool; the purpose of this clause being to provide for such stockholders as may sell their stock under the terms hereof, a price of fourteen dollars ($14.00) net, without any assessment for expenses. A *pro rata* deduction from said amount shall be made for all shares not sold under the terms hereof.

" 2. The committee agrees to sell and deliver to said Ballou, under the terms hereof, all shares of stock which they may be legally authorized to so sell and deliver under the terms of said pooling agreement.

" 3. The trust company agrees to accept all moneys deposited with it by the said Ballou, and to pay out the same as and when requested by the committee under the terms hereof.

" 4. Within a reasonable time after final payment is made to the trust company, the committee shall cause to be surrendered to the trust company the receipt vouchers issued by the trust company to the depositors of stock, and upon delivery of such vouchers to the trust company, the company shall deliver to Ballou or his order the respective stock released thereby, and

pay to the depositors of such stock the purchase money therefor; provided that cash deposited for the purchase of stock, receipt . vouchers for which are not surrendered within ninety (90) days after the final payment, shall be returned to said Ballou.

"Details of transfer of the stock are to be agreed upon by the parties hereto after the first payment is made to the trust company.

"5. It is understood that in this agreement the committee are· acting not as principals but as agents representing owners of the pooled stock, and the committee assume no individual liability of any nature whatsoever by reason of the execution of this agreement.

"In Witness Whereof the parties hereto have ·hereunto set their signatures this thirtieth day of October, 1903.

"Executed in triplicate."

Here followed the signatures of Ballou, of the five members of the protective committee, and of the City Trust Company by its treasurer.

Before the foregoing contract was executed the protective committee sent to the holders of the voting trust certificates the following communication:

"October 30, 1903.

"To the Depositors:

"Your committee has to-day been offered ˙fourteen dollars ($14) per share net for the pooled stock; twenty-five thousand dollars cash to bind the bargain has been deposited with the City Trust Company.   This offer must be accepted or rejected on or before November third.

"If you wish to have your stock sold at this figure, fill out the enclosed card and send it in by *return mail.*

"Your committee unqualifiedly recommends the acceptance of the offer, and the majority of the depositors have· already authorized your committee to accept the offer.

[Signatures of the members of the protective committee.]

"In signing the enclosed card be careful to sign in the same name which appears on your certificate."

The card referred to was signed and returned by the plaintiff and the other certificate holders, and was as follows:

"Protective Committee.

"Pool of Common Stock of John P. Squire & Co.

"James S. Murphy, John G. Massie, E. P. Shaw, James M. Steadman, E. K. Hall, Protective Committee,

"Room 714, 101 Milk Street, Boston.

"Gentlemen: You are hereby authorized to sell the John P. Squire & Co. stock or certificates deposited in the pool of the Protective Committee at the City Trust Company, Boston, by the undersigned, at such price as may be agreed upon by your committee, and such price is hereby approved by the undersigned. Not less than $14 net.

"This authority is given in pursuance of and subject to the provisions of the pooling agreement of February 5, 1903, between your committee and the undersigned and all other depositors.

"Oct. 1903."

All of the defendants demurred to the bill for want of equity, demurrers being filed respectively for the defendant Burrage, for the members of the protective committee, for the defendant Ballou, and for the defendant Swift.

The case came on to be heard before *Hammond*, J. upon the amended bill of complaint, and the demurrers thereto. The justice sustained the demurrers and ordered that the bill be dismissed. At the request of the plaintiff, he reported the case for determination by the full court.

*W. B. Farr*, for the plaintiff.

*J. B. Warner*, for Burrage.

*J. Abbott*, for Ballou.

*F. Hutchinson*, for Swift.

*H. W. Dunn*, for the protective committee.

SHELDON, J. We are of opinion that the demurrers of the respective defendants must be sustained.

No relief is sought against the defendant Burrage except that he be held for the payment of costs. The object of the bill is to set aside the agreement for a sale of the stock or voting trust certificates of John P. Squire and Company, a corporation, which has been made by the five last named defendants, called the protective committee, with the defendant Ballou, on the ground

that the committee had no authority to make that agreement, and that it secured the assent of the owners of the certificates to the agreement by withholding from them information to which they were entitled and through the lack of which they were induced to give an assent which otherwise they would not have given. Burrage is not a party to this agreement. The bill charges that he, being a director and the active manager of the finances of the corporation, with the intent to secure the control of the business and the capital stock for the defendant Swift, mismanaged and crippled its business so as to reduce the market value of the certificates and induce the protective committee to make the agreement in question with Ballou, who was really acting for Swift, as the bill alleges.

Plainly, if these averments of the bill are true, the company, or, if the defendant Burrage was able by his control to prevent action by the company, then the individual stockholders, would have a remedy against him for these wrongful acts. *Warren* v. *Para Rubber Shoe Co.* 166 Mass. 97. *Brewer* v. *Boston Theatre*, 104 Mass. 378. But this bill is not brought to obtain such a remedy against him; it has neither the necessary parties nor the necessary averments for that purpose; and no contention is made in argument that it can be supported upon that ground. See *Doherty* v. *Mercantile Trust Co.* 184 Mass. 590; *Dunphy* v. *Traveller Newspaper Association*, 146 Mass. 495. Nor is it alleged or contended that Burrage and the protective committee were acting in collusion to sell the stock below its value or for any other unlawful purpose, or that there was any concert of action between him and either Ballou or Swift, or that he had any interest in the purchase by either of them. His alleged frauds are in no way connected with the action of the protective committee which is complained of. The only charge against him is that he was guilty of a breach of trust not connected in any way with the relief which is prayed for. It is clear that the bill cannot be maintained against him.

As to the other defendants, the main question is whether on the averments of the bill the agreement made by the protective committee for the sale to Ballou of the pooled stock was within the powers conferred upon the committee by the agreement of February 5, 1903; and it seems plain to us that it was. That

agreement by its fourth clause expressly authorized the com-
mittee "to negotiate in behalf of the owners for the sale of the
pooled stock," and this is not cut down by the further authority
given to sell not less than two thirds of such stock at such prices
as might be approved in writing by the owners. The agree-
ment with Ballou is especially limited to such stock as the com-
mittee may be authorized to sell. Nor does the notice sent to
the owners of the pooled stock in any respect misstate the terms
of the bargain made. It does not state the whole of such terms;
but it does not purport so to do, and there is no averment or
contention that the members of the committee were not ready
to give or did not give full information as to the terms of the
proposed sale to any stockholder who desired it. Nor is there
any averment in the bill that the price was inadequate, or that
it was below either the market value or the intrinsic value of
the stock at the time when the bargain was made or ever since,
or that a higher price could have been obtained from any other
purchaser, or that the bargain was not an advantageous one for
the stockholders. Nor can it be said that the terms of the
agreement made with Ballou are so onerous upon the stock-
holders as to warrant the court in interfering. Their principal
effect is to liquidate the damages to be paid by Ballou in case of
default by him after the contract should have become binding;
and we see nothing in this stipulation which is either unreason-
able upon its face or liable to result injuriously to the stock-
holders. An agreement which secured $25,000 at once and a
payment of one fourth of the whole price within twenty-four
hours, upon pain of forfeiture, cannot be said to have been un-
reasonable, from the standpoint of the vendor. Even if the
agreement be so construed as to give for a time an option to
Ballou, it is not so given as to be beyond the authority given to
the committee by the fourth article of the protective agreement;
and at any rate it appears by the bill that if there was originally
any option the parties thereto proposed to execute it fully and
complete the bargain when the bill was filed. Nor do we see
that it was material that Ballou was in fact acting for Swift in
making his purchase. This is not averred to have been known
to the members of the protective committee; and according to
the averment of the tenth paragraph of the bill, it was not any

purchase by Swift, but only one at an inadequate price that was to be guarded against; and, as we have already pointed out, this price does not appear to have been inadequate.

The bill fails to show a case entitling the plaintiff to the relief sought.

According to the terms of the report, the order must be

*Demurrer sustained ; bill dismissed.*