SAMUEL D. WARREN & others, executors, *vs.* PARA RUBBER SHOE COMPANY & others.

SAME *vs.* PARA RUBBER SHOE COMPANY & another.

Suffolk.   December 3, 4, 1895. — May 21, 1896.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Corporation — Contract — Law and Equity — Survival of Remedy — Parties.*

A corporation may contract with persons who are directors to act as its selling agents, provided this is done openly, and with the express or implied assent of all the stockholders; and such assent may be implied from long continued acquiescence.

If a corporation enters into a contract, which is valid in its inception, with a firm to act as its selling agent, the corporation is not entitled after the termination of the agency, which was a continuing one, and some of the many acts performed under it beneficial to the corporation, to treat the contract as wholly invalid by reason of negligent and fraudulent acts of the firm, and to maintain a bill in equity to recover the profits made by the firm, but the remedy of the corporation is by an action at law for damages for breach of contract or for breach of duty.

A corporation which made a contract with a firm to act as its selling agent cannot, after the termination of the agency, maintain a bill in equity against the members of the firm as a bill for an account, or for reopening accounts, the averments of which in respect to the accounting are in effect only that the firm charged commissions prematurely.

A bill in equity by a corporation, which made a contract with persons who were directors to act as its selling agents, brought after the termination of the agency, charging negligent and fraudulent acts as such agents only, cannot be maintained as a suit against them as directors for their misconduct, but the remedy of the corporation is by an action at law for damages.

A bill in equity by a corporation, which made a contract with a firm, one of whom was director, president, and general manager of the corporation, to act as its selling agent, alleging that he did not act in good faith in the performance of his duties in those positions, but conducted the business for the benefit of his firm rather than of the corporation, may be maintained against him, as well as an action at law; and the remedy is not defeated by his death.

Where a relation has existed which involved the performance of certain duties for pay, and especially where that relation was of a fiduciary character, and there

was a failure to perform those duties, the remedy of the person injured by such failure survives against the estate of the other after his death.

The request of stockholders in a corporation, which made a contract with a firm, one of whom was an officer of the corporation, to act as its selling agent, for the continued prosecution of a bill in equity by the corporation against him for his negligence and want of fidelity in the discharge of his duties as such officer, is sufficient, after a non-compliance with the request, to entitle such stockholders to pursue the remedy in their own name.

If, after a demurrer to a bill in equity by a corporation against persons with whom it made a contract to act as its selling agents has been sustained, requests are made by stockholders of the corporation to put the conduct of the litigation into their hands, with full powers, accompanied by an offer to assume the expense and conduct the litigation in such way as they might be advised, but the directors of the corporation are never asked to apply for leave to amend the bill by changing it into an action at law, or to bring an independent action at law, and the counsel for the stockholders do not suggest to the counsel for the corporation the expediency of such an application or action, and the bill is afterwards dismissed by consent of the parties, such stockholders are not entitled to maintain in their own name a new bill, containing substantially the same allegations against the defendants.

TWO BILLS IN EQUITY, each filed July 5, 1893, by the executors of the will of Samuel D. Warren, in behalf of themselves and all other stockholders of the Para Rubber Shoe Company similarly situated; the first being against that corporation, William S. Houghton, George D. Clapp, and Elizabeth E. Coolidge, administratrix of the estate of Albert L. Coolidge, to enforce claims of the corporation against the members of the late firm of Houghton, Coolidge, and Company, founded upon their alleged wrongful and fraudulent conduct as selling agents of the corporation; and the second against the corporation and said Coolidge as such administratrix, to enforce in addition claims of the corporation founded upon alleged negligence and want of fidelity on the part of Coolidge in the discharge of his duties as an officer of the corporation. Each bill alleged that a former bill in equity was brought by the corporation against the present individual defendants, demurrers to which were sustained, which bills were, on July 5, 1893, dismissed by consent of the parties. The individual defendants demurred to the bills. Hearing before *Barker*, J., who reserved the cases for the determination of the full court. The facts appear in the opinion.

The cases were argued at the bar in December, 1895, and afterwards were submitted on the briefs to all the judges.

*G. Putnam*, for Houghton and Clapp.

*M. Storey*, for the administratrix of the estate of Albert L. Coolidge.

*L. D. Brandeis & W. H. Dunbar*, for the plaintiffs.

ALLEN, J.   According to the averments of the present bills, the demurrers to the bills in equity brought by the corporation were sustained, upon the ground that the remedy, if any, was by actions at law.   Those. bills in equity have not been laid before us, nor is there anything to show how far the averments therein contained were similar to those of the present bills.   It is now averred that the former bills in equity alleged " some of the facts hereinbefore set forth."   There is nothing to show what facts were then omitted, but so far as concerns the question whether the remedy of the corporation was at law or in equity, we think it may be assumed, as the defendant Coolidge now asserts, that the averments in the suits brought by the corporation and those in the present suits are substantially alike. We treat them so for the purposes of the present decision.

Acting on this assumption, we will first consider whether the demurrers in those former suits were rightly sustained.

The first of those suits included as defendants the two members of the firm of Houghton, Coolidge, and Company, who were then surviving, and the administratrix of the estate of Coolidge, who was then deceased.

The firm had been the selling agent of the corporation, under a contract which defined its duties and obligations, and by the terms of which the firm was to receive a commission of four and a half per cent on sales of goods, and interest at the rate of six per cent per year on advancements made for the corporation. . The substance of the charges against the firm is that it mismanaged the business, and fraudulently misrepresented to the corporation its condition, and thereby induced the corporation to continue to carry on its works, when otherwise it would have stopped them or reduced the manufacture ; and by means of the corporation's thus continuing to carry on its works the firm was enabled to receive its commissions on sales and interest on advancements.

There is no distinct averment to show at what date the contract was made, nor whether it was in writing, nor how long it

was to continue; but it is averred that from April 24, 1882, to June 29, 1891, the firm was employed as selling agent, and that there was a contract existing between the firm and the corporation, by the terms of which the commissions and interest aforesaid were agreed upon, and the firm became bound and undertook and promised to act faithfully as selling agent. We infer that it was in writing from the averment that the plaintiffs have not the contract in their possession, nor a copy thereof, and therefore cannot set forth its terms more specifically. Coolidge died on June 29, 1891.

The present plaintiffs now contend that the corporation was entitled to relief in equity on three grounds, as follows:

1. That the corporation was entitled to repudiate the contract with the firm, because it was invalid when made, and also because it became vitiated afterwards, and therefore the corporation was entitled to recover all the profits made by the firm under the contract, and that this could only be done in equity.

2. That the corporation was entitled to have the accounts of the firm reopened, and a new accounting made.

3. That the corporation was entitled to maintain a bill in equity against its directors to recover for their misconduct.

We will consider these several grounds in their order.

In the first place, it does not appear that the contract between the corporation and the firm was invalid when made. Even if it be assumed, though this is not distinctly averred, that the members of the firm were all directors of the corporation at that time, it is well settled that a corporation may contract with persons who are directors to act as selling agent, provided this is done openly, and with the express or implied assent of all the stockholders. Such assent may be implied from long continued acquiescence. *Kelley* v. *Newburyport & Amesbury Horse Railroad*, 141 Mass. 496, 499, and cases there cited. *Barr* v. *New York, Lake Erie, & Western Railroad*, 125 N. Y. 263. Such contract, though open to suspicion, is not invalid *per se.*

There is no averment that any stockholder in the corporation was ignorant of the terms of the contract, or of the relation of the members of the firm to the corporation, at the time when the contract was made, or at any time thereafter; or even that the terms of the contract were unreasonable in themselves. We

must therefore now assume that the contract in itself was free from fraud and unobjectionable in its terms at the outset, and that the firm continued to act under it as selling agent until the death of Coolidge, without any attempt by the corporation to repudiate or rescind it, and, so far as appears, without any complaint on the part of any stockholder. There is no averment that the surviving members of the firm acted as selling agents after Coolidge's death; and the first bill in equity, which included the surviving members of the firm and Coolidge's administratrix as defendants, was brought on January 5, 1892, which is the date of the first open complaint, so far as appears.

It is apparent that the corporation could not recover back the sums received by the firm for commissions and interest, on the ground that the contract was invalid in its inception. The plaintiffs contend, however, that it became invalid afterwards by reason of the negligent and fraudulent acts of the firm. If the corporation might have repudiated the contract on this ground, it did not do so, but it continued to act under the contract, and to treat it as subsisting and valid until June 29, 1891. Under these circumstances, after the termination of the agency, it was not the right of the corporation to treat the contract with the firm as wholly invalid. The agency was a continuing one, and under it many acts were performed for the corporation, some of which were beneficial. The averment is, that in certain respects the firm conducted the business with negligence, and in certain other respects with fraud. Assuming this to be true, the remedy of the corporation was by asserting a claim for damages for breach of contract or for breach of duty. At that stage of affairs, it did not have the right to repudiate the agency entirely, and recover all profits made by the firm.

The plaintiffs contend, in the second place, that the bill against the firm could have been maintained as a bill for an account, or for reopening accounts. The specific averments of facts which relate to this contention are, that the firm received large sums for commissions, and for interest on advancements; that for several years it reported sales in excess of its actual sales; that the goods actually sold by it during the year 1887 were sold for prices amounting to $25,000 more than the prices in fact received and accounted for by the firm; that at other times it

reported sales at prices greatly in excess of the prices actually received therefor; that at divers times the firm reported that it was entitled to commissions to which it was not then entitled, and that it received commissions at times long prior to the times at which, if ever, such commissions were payable; and that it charged to the corporation in accounts current large sums as due from the corporation to the firm which were not at such times due.

If the firm reported an excess of sales over those actually made, the natural result would be that it would be held to account for the prices of more goods than it had actually sold. But when we find no averment that the firm has ever failed to account in full for the sums received by it from either actual or reported sales of goods, it becomes obvious that the true meaning of the averments in respect to the accounting is only that the firm charged commissions prematurely.

There is no averment that there was any charge for commissions or interest at a greater rate than the contract allowed, or that the firm ever actually received any money for goods sold which it did not account for and pay over, subject to such deductions as the contract allowed. If during the year 1887 the goods actually sold were sold for prices amounting to $25,000 more than the prices in fact received by the firm, there is no averment that this loss was either fraudulent or negligent on its part. Taking all the averments together, and construing them reasonably, in reference to what they omit as well as to what they contain, it does not appear that the corporation was finally ignorant of any of the actual transactions made in its behalf by the firm. The corporation had all the means and elements necessary for stating the accounts correctly, so far as commissions and interest were concerned. According to the averments of the bill, the corporation was misled for a time; but since it must be assumed, in the absence of averments to the contrary, that the corporation had knowledge of all the goods consigned by it to the firm, and that the firm fully accounted for and paid over the prices of all goods sold by it, except for the $25,000, which it did not itself receive, it appears that the corporation stood in no need of any new statement of the accounts by the firm. *Frue* v. *Loring,* 120 Mass. 507.

The third ground relied on by the plaintiffs to show that the corporation was entitled to relief in equity is that it could maintain its bill as a suit against its directors to recover for their misconduct. Let us first see if there are any charges against Houghton and Clapp in their capacity of directors. The bill makes a clear distinction between the acts of the firm as selling agent, and the acts of Coolidge in his capacity of president and manager of the corporation. In the first place, the wrongful acts of the firm as selling agent are set forth in detail. The fact that the members of the firm were directors made no difference in the duties of the firm as selling agent. Those duties were defined in the express contract, and the alleged violations of them have been already considered. What we have now to consider is whether Houghton and Clapp are alleged to have violated any duties resting upon them in their capacity as directors. The bill goes on to aver that Coolidge, Houghton, and Clapp were all directors from November 29, 1881, to June 29, 1891, and that Coolidge was president and chief executive and managing officer; and that Coolidge as president and manager did various acts which are alleged to have been fraudulent. There is no averment that either Houghton or Clapp in his capacity as director did any fraudulent acts himself, or that either of them participated in any of the acts done by Coolidge as president, or was even cognizant thereof. So far as Houghton and Clapp are concerned, the only acts charged against them are the acts done by the firm as selling agent; and the general averment that the firm and Coolidge caused and induced the corporation to continue the manufacture of goods at a loss must be referred, certainly so far as Houghton and Clapp are concerned, to the acts done by the firm as selling agent. The averments against Houghton and Clapp are not sufficiently certain to charge either of them with fraudulent misconduct in his office of director. *Nichols* v. *Rogers*, 139 Mass. 146. *Van Weel* v. *Winston*, 115 U. S. 228, 237, 238. *Wallingford* v. *Mutual Society*, 5 App. Cas. 685, 697, 701, 705, 709. So far as they are concerned, upon the averments of the bill, the fact that they were directors furnished to the corporation no ground for relief in equity. The remedy against them was by asserting a claim for damages by an action at law.

In respect to Coolidge, the case stands differently. The aver-ments are in substance that he was director, president, and general manager of the corporation, and intrusted with the care and management of its business, and that he did not act in good faith in the performance of his duties in these positions, but conducted the business for the benefit of his firm rather than of the corporation. Specifications of particulars are added, some of which are sufficiently definite not to be open to demurrer for vagueness and generality. Upon these averments, in view of the fiduciary relation of Coolidge to the corporation, a bill in equity could be maintained by the corporation against him, as well as an action at law. *Citizens' Loan Association* v. *Lyons,* 2 Stew. (N. J.) 110. *Citizens' Building, Loan, & Savings Asso-ciation* v. *Coriell,* 7 Stew. (N. J.) 383. *Brinckerhoff* v. *Bost-wick,* 88 N. Y. 52, and 99 N. Y. 185. *Duncomb* v. *New York, Housatonic, & Northern Railroad,* 84 N. Y. 190. *Hoyle* v. *Plattsburgh & Montreal Railroad,* 54 N. Y. 314. *Booth* v. *Rob-inson,* 55 Md. 419, 437, 438. *Horn Silver Mining Co.* v. *Ryan,* 42 Minn. 196. *Hodges* v. *New England Screw Co.* 1 R. I. 312. Angell & Ames on Corp. § 312.

We have, then, to consider whether this remedy would cease with the death of Coolidge.

We may assume that the injury to the corporation and the benefit to the estate of Coolidge were too indirect to furnish of themselves a reason for the survival of the remedy. *Read* v. *Hatch,* 19 Pick. 47. *Cutting* v. *Tower,* 14 Gray, 183. *Cum-mings* v. *Bird,* 115 Mass. 346. *Leggate* v. *Moulton,* 115 Mass. 552. *Cutter* v. *Hamlen,* 147 Mass. 471. *Phillips* v. *Homfray,* 24 Ch. D. 439, 454, 463. *Finlay* v. *Chirney,* 20 Q. B. D. 494. But where a relation has existed which involved the perform-ance of certain duties for pay, and especially where that relation was of a fiduciary character and there was a failure to perform those duties, the remedy has been held to survive. The decision most closely in point of any which has come to our notice is *Concha* v. *Murrieta,* 40 Ch. D. 543. But this exception to the application of the maxim, *Actio personalis moritur cum persona,* has often been stated. *Batthyany* v. *Walford,* 36 Ch. D. 269, 279–281. *Phillips* v. *Homfray,* 24 Ch. D. 439, 456. *Morgan* v. *Ravey,* 6 H. & N. 265. *Sollers* v. *Lawrence,* Willes, 413, 421.

We come to the conclusion, therefore, that as against the administratrix of the estate of Coolidge the bill in equity of the corporation was not demurrable on the ground that the only remedy was by an action at law, and that the remedy in equity was not defeated by his death. The averments were sufficient to entitle the corporation to have an answer filed to its bill; and the requests by the plaintiffs to the corporation for the continued prosecution of that suit were sufficient to entitle the plaintiffs to pursue the remedy in their own name.

We have also to consider whether there is any ground upon which these suits by the present plaintiffs can stand, as against Houghton and Clapp.

The plaintiffs' counsel in their brief say that, as long as the suits of the corporation were under the management of the counsel then retained by the corporation, the plaintiffs were safe in relying on an honest effort to recover against the defendants; and again, that the plaintiffs have not at any time charged that the directors in any way failed in their duties until they abandoned the attempt to recover by their action on June 27, 1893. It is thus conceded that the directors did all that they were asked to do, till after they had encountered the adverse decision of the single justice, which was rendered on May 29, 1893.

The bills allege that the counsel of the corporation, before the directors' vote of June 27 was passed, advised the corporation that it had a good cause of action against all the individual defendants. It is not alleged at what date this advice was given, or that it was after the decision of May 29, or that it was the opinion of the counsel of the corporation that it would be best to seek to amend the bills in equity into actions at law, or to bring independent actions at law, or that the counsel of the corporation had any other opinion or purpose except to prosecute an appeal from the decision of the single justice, and thus to obtain the judgment of the full court as to its correctness; although it is alleged that the counsel for these plaintiffs had frequent interviews with the counsel for the corporation prior to June 26, 1893, in which the proper course to pursue was fully discussed, and the counsel for these plaintiffs communicated to the counsel for the corporation their own opinion as to the proper course to pursue, in order to recover against the defend-

ants.   What this opinion was is not stated in the bills in equity, but we may perhaps infer from the letter of the plaintiffs' counsel to the counsel for the corporation, dated June 21, 1893, which is annexed as an exhibit, that in their opinion leave to amend should be applied for, or new bills filed, and also that two writs should be brought against Coolidge's estate, one in tort and one in contract.   It does not appear, even by implication, that any of the amendments which were suggested by the counsel for the present plaintiffs would have met the objection that the proper remedy against Houghton and Clapp was at law; and the letter contained no suggestion to bring an action at law against either of them.

The two directors who, according to the averments, " were not under the influence and control of the defendants, but represented the true interests of the corporation, and favored an earnest effort to recover in behalf of the corporation against the defendants," united in the final vote of the directors of June 27, declining to take the action requested by the plaintiffs' counsel; as appears by the exhibit annexed to the plaintiffs' bills showing that the vote was unanimously passed.

So far as appears, on looking through the averments of the bills, and the exhibits annexed, the directors were never asked to apply for leave to amend the bills in equity by changing them into actions at law, or to bring an independent action at law against either Houghton or Clapp; nor did the counsel for the plaintiffs ever suggest to the counsel for the corporation the expediency of applying for leave so to amend the bills in equity, or of bringing actions at law against Houghton or Clapp; nor, so far as appears, did the counsel for the corporation ever advise the bringing of actions at law against either of them.

We have been brought to the conclusion that the only remedy which the corporation had against Houghton and Clapp was at law, and it follows, from the views hereinbefore expressed, that an action at law against the selling agent to recover the profits made by it, as money had and received to the plaintiffs' use, could not have been maintained.   The action would have to rest on a different ground.   Whether an action at law to recover damages would have proved to be an expedient remedy, or whether the difficulties to be encountered would have rendered

it of little value, we cannot now consider. We do not find any-
thing in the averments of the bill to show that the directors
were asked to bring an action at law against Houghton and
Clapp, or that they ought to have done so. .

There were requests to put the conduct of the litigation into
the hands of the plaintiffs, with full powers, and an offer to
assume the expense and conduct the litigation in such way
as they might be advised; but that is not the same thing as
asking the corporation itself to proceed at law. The offer of
the plaintiffs may have served to emphasize the requests which
were made, but it did not add to them.

Under this state of things, the plaintiffs are entitled to have
the administratrix of Coolidge answer to their bill, but they
cannot maintain the bill as against Clapp, or the administrator
of the estate of Houghton, who has died since these suits were
begun. *Brewer* v. *Boston Theatre*, 104 Mass. 378. *Dunphy* v.
*Traveller Newspaper Asssociation*, 146 Mass. 495.

The above conclusions have the sanction of a majority of the
court.                                        *Ordered accordingly.*