NEWTON H. FOSTER *vs.* C. G. HOWES COMPANY.

Suffolk.   February 5, 1918. — April 18, 1918.

Present: RUGG, C. J., DE COURCY, CROSBY, PIERCE, & CARROLL, JJ.

*Corporation,* Officers and agents.

Where all the stock of a corporation engaged in the business of cleansing and dyeing was held by five persons, all of whom were its officers and directors, and at a directors' meeting at which all the directors and consequently all the stockholders were present it was voted unanimously that any net earnings in excess of the amount required to pay a dividend of eight per cent per annum on the capital stock of this company should be distributed in the proportion of three fifths of such net earnings to the president, one fifth to the vice-president and one fifth to the assistant treasurer, and where this action afterwards was ratified by unanimous votes at subsequent meetings of the stockholders and the directors, it was *held* that there was nothing unlawful in the payment of the officers in this manner and that the assistant treasurer was entitled to the share of the net profits voted to him.

It appeared that the assistant treasurer of the corporation described above was credited on the books of the company with the amount of $3,403, which he was entitled to receive as additional salary under the votes of the directors and the stockholders, and that the assistant treasurer under an arrangement made between him and the treasurer, who purchased his shares in the corporation, accepted notes of the corporation of the face value of $2,000 in full satisfaction and discharge of his entire demand against the company. The notes were executed by the treasurer, were entered on the books of the corporation by the bookkeeper under instructions of the president, and on the same day the vice president was told that the notes had been given in settlement of the former assistant treasurer's account. The first four of these notes to fall due, amounting to $400, were paid at maturity and before any of them was paid a majority of the directors and of the stockholders knew of the existence of the notes and the purpose for which they had been given and no question was raised as to their validity, until the former assistant treasurer brought an action on other of these notes amounting to $500. An auditor to whom the action was referred found that "the act of signing and delivery of the notes was fully ratified by the directors and stockholders, and therefore by the company itself, and that the right of the company to avoid the contract thus made, if such right ever existed, has been waived, and the notes in suit are valid outstanding obligations of the defendant." *Held,* that this finding of the auditor was warranted by the evidence.

CONTRACT against the C. G. Howes Company, a corporation, on three promissory notes made by that company and signed by its treasurer, due, respectively, $200 on March 15, 1916, $100 on April 15, 1916, and $200 on May 14, 1916. Writ dated May 18, 1916.

The case was referred to an auditor, who made a report containing the findings that are stated in the opinion.

The case was heard upon the auditor's report by *Aiken,* C. J., without a jury. The defendant asked the Chief Justice to make the two rulings which are quoted in the opinion. The Chief Justice refused to make either of these rulings and found for the plaintiff in the sum of $529.33. The defendant alleged exceptions.

*J. W. Morton,* for the defendant.

*F. Burke,* (*J. P. Bell* with him,) for the plaintiff.

PIERCE, J. The defendant company was incorporated under the laws of this Commonwealth for the purpose of engaging in the business of cleansing, dyeing, laundering and renovating wearing apparel and for other kindred purposes. Its entire capital, $20,000, represented by two hundred shares of stock of the par value of $100, was used in the purchase of the personal property and good will of a business owned and conducted by one Clarence G. Howes under the name and style of the C. G. Howes Company. The stock of the company when issued was allotted one hundred and ninety-eight shares to Clarence G. Howes, one share to Lindsey K. Foster, and one share to Horace G. Pender. The shares held by Foster and Pender were transferred to them by Howes to enable Pender and Foster to qualify as directors.

On May 8, 1912, upon the organization of the corporation Alfred Hopkins, Jr., and Newton H. Foster became stockholders and the number of stockholders was thereby increased from three to five. The by-laws adopted provided "for a board of five directors who, among other things, were to have the general direction, management and control of the business and its officers, agents and servants; to have and exercise all powers and authorities not otherwise delegated by law or by the by-laws; to declare dividends of surplus profits whenever deemed expedient; to have access to all books and papers of the company, its officers and agents; to fix all salaries, including their own; to present financial reports at the annual meetings of stockholders. Other

than as stated, the by-laws contained no further reference to the matter of dividends."

They provided in addition "for a president, vice-president, treasurer, assistant treasurer and clerk, and prescribed their respective duties and powers. The treasurer was given custody of the corporate funds, power to receive all moneys and make disbursements as directed, to sign certificates of stock, draw checks and drafts for the transaction of business, to deposit money, draw checks and indorse for deposit checks, notes and drafts received. He was directed to keep correct books of account in such form as the directors should prescribe. He was given no express power to execute or deliver notes on behalf of the corporation, nor was such power conferred upon him by vote or otherwise."

The fiscal year of the corporation terminated on March 1, and the date of the annual meeting was fixed on the second Thursday in March of each year. Upon organization every stockholder became a director. Howes became president and treasurer, Pender clerk, Newton H. Foster assistant treasurer and Hopkins vice president.

At a directors' meeting held on May 15, 1912, all directors, and consequently all stockholders, being present, the compensation or salaries of the various officers were fixed by unanimous vote; and it was further provided "and as an additional salary, any net earnings in excess of the amount required to pay a dividend of 8% per annum on the capital stock of this company, to be divided in the proportion of three fifths of such net earnings to the President and Treasurer, Mr. Howes, one fifth to the Vice-President, Mr. Hopkins, and one fifth to the Assistant Treasurer, Mr. Foster."

In July, 1912, the board of directors voted that the plaintiff's salary, as assistant treasurer, be fixed at $1,040 "with the additional salary as stated in the vote of the Board of Directors passed at the meeting of May 15th, 1912."

At the annual meeting of stockholders on March 13, 1913, the treasurer, Howes, reported upon the financial condition and results of the year's business. All the stockholders, five in number, were re-elected members of the board of directors, and all the old officers of the company were re-elected.

At a meeting of the board of directors held on the same day, all the directors being present except L. K. Foster, it was voted to increase the fixed or "executive" salary of Hopkins, the vice-president, and of Foster, the assistant treasurer; and it was further voted that "'each of the three officers'" named in the vote of May 15, 1912, was "'to receive during the current year a share of the excess net earnings' (over and above the amount required to pay a dividend of 8% per annum on the capital stock) 'in proportion to the holdings of shares of stock in the company.'"

In June, 1913, L. K. Foster resigned as a member of the board of directors, and the single share of stock held by him, with the assent of the board of directors, was transferred to Emily F. Howes, the wife of Clarence G. Howes, who thereupon by election became a director of the company.

At the annual meeting on March 19, 1914, all the stockholders by election became members of the board of directors; and all the old officers were re-elected at that meeting, or at the meeting of the board of directors on the same day.

During the period between the organization of the company and November 14, 1914, "practically the entire management of the financial operations of the company . . . was in the hands of Howes, who supervised the work of bookkeeping and from time to time directed entries upon the books by the bookkeeper crediting to the various officers of the company all of the excess profits as additional salaries under the terms of the votes" of May 15, 1912, and of March 13, 1913. The entries so made were termed "profits" upon the books. In accordance with this practice the following sums were credited to the plaintiff's account on the books: $481.32, as of December 1, 1912; $421.09, as of March 1, 1913; $1,859.60, as of March 1, 1914; $1,582.80, as on or about November 14, 1914, at which time the total credit balance in favor of the plaintiff upon the books stood at $3,403.08.

The finding of the auditor, that "practically all of the stockholders knew how such division was being made throughout the entire period in question," is fully supported by the further finding that "directors' meetings were held thereafter [after the first directors' meeting held May 15, 1912,] monthly until October, 1914, at which the treasurer, with few exceptions, reported as to business transacted and the expenses and profits thereof;" as

also, by the fact that "a majority of the directors and stockholders" knew that "both Hopkins and Foster on more than one occasion devoted excess profits credited to them upon the books to the purchase of additional stock from Howes," and by their votes formally ratified the several transfers of stock.

The by-laws authorized the board of directors to "fix all salaries, including their own." It is not necessary to decide whether the board acting in good faith under the by-law had authority to fix salaries in terms absolute, or in terms contingent upon the success of the business, or, as it in fact did, to fix a minimum and maximum salary for each officer. However that may be, under the circumstances here disclosed it is clear that the provision for an "additional salary" to be paid out of "net earnings in excess of the amount required to pay a dividend of 8% per annum on the capital stock of this company, to be divided" in certain named proportions between the officers of the company or according to their several holdings of stock, is not an illegal and unlawful appropriation of the funds of the company as the defendant contends, in that it amounts to a dividend of excess profits between stockholders of the same class, not according to the amount of stock each one owns.

The votes of the board of directors, consisting of all the stockholders, were unanimous in adopting the method by which the salaries should be determined. These votes in legal effect were authorized by the stockholders by the absence of any disaffirmance or dissent at any subsequent meeting of directors or stockholders when the reports of the treasurer as to the disposition of the excess profits were presented to that meeting for its consideration, criticism, approval or rejection. *Kelley* v. *Newburyport & Amesbury Horse Railroad,* 141 Mass. 496. *Warren* v. *Para Rubber Shoe Co.* 166 Mass. 97. *Beacon Trust Co.* v. *Souther,* 183 Mass. 413.

On October 1, 1914, the plaintiff gave notice of his intention to sever his connection with the company and, as required by the condition upon the certificates of stock, gave notice of his desire to dispose of his stock at the expiration of thirty days. There then stood to the credit of the plaintiff upon the books of the company $3,403.08, which he was entitled to receive as additional salary under the votes of the directors authorized by the by-laws or by the vote and the ratification of the stockholders. Under an

arrangement with the treasurer, who purchased the stock, the plaintiff received eleven promissory notes of the company of the face value of $2,000, in full satisfaction and discharge of his entire demand against the company. These notes were executed by the treasurer, were entered upon the books by the bookkeeper under instructions by Howes, and Hopkins, the vice-president, was told on the same day, November 14, 1914, that the notes had been given in settlement of the plaintiff's account. The first four notes to fall due, aggregating $400, were paid in due course to the plaintiff. The auditor finds that "Prior to the payment of any one of the said notes a majority of the directors and of the stockholders of the company knew of their existence, and for what purpose they had been given, and it does not appear that any step was taken by official action or otherwise to repudiate the obligation or any question raised as to the validity of the notes until Exhibit 1 in this case was presented for payment and suit brought to recover thereon. There does not appear to have been at any time any vote expressly and in terms ratifying the giving of the notes." All the notes were given and received in payment of an existing debt due from the company to the plaintiff. Whether the treasurer had implied authority to execute the notes under the by-laws becomes immaterial in view of the finding of the auditor, which we think the evidence warrants, that "the act of signing and delivery of the notes was fully ratified by the directors and stockholders, and therefore by the company itself, and that the right of the company to avoid the contract thus made, if such right ever existed, has been waived, and the notes in suit are valid outstanding obligations of the defendant." *Sherman* v. *Fitch,* 98 Mass. 59, 64.

It follows that the request of the defendant for the rulings

"(1) Where the directors of a corporation pass a vote to the effect that three of their number shall receive as salary all the net profits of the corporation in excess of an amount sufficient to pay an eight per cent (8%) dividend on the stock in any year, and those of the directors who were to receive such additional salary vote in favor of the passage of such vote, and their votes were necessary for the passage of such vote, such vote is illegal and void and of no effect,"

and

" (2) Where the treasurer of a corporation, without having specific authority given to him by the Articles of Organization, or by the By-laws, or by any vote of the directors or stockholders, makes notes of the corporation and delivers them to the payee, who was assistant treasurer and a director of the corporation from the time of its incorporation to a time just prior to the giving of the notes, and in addition such notes were given in payment of an alleged claim of the payee to his share of the profits of the corporation, and no vote of the directors had been passed, authorizing the payment of a dividend or division of profits, and a majority of the directors at the time the first note became due had been elected subsequent to the date of the giving of the notes, and the treasurer had informed them that the notes had been given, and the evidence does not show that such newly elected directors knew for just what purpose said notes had been given, whether in payment of unpaid salary or as a share of undivided profits, and no vote or other official action was taken by the directors of the corporation in any way ratifying the giving of said notes, then in such case said notes were given without authority, without consideration and were not ratified by the corporation, and the corporation will not be liable on said notes, especially where the plaintiff is the payee as above described, and not a holder in due course,"
was refused rightly.

*Exceptions overruled.*