NATHANIEL P. BEAMAN vs. HENRY GERRISH, JR., & another.

SAME vs. SAME.

SAME vs. SAME.

SAME vs. SAME.

ARTHUR W. BURKE vs. NATHANIEL P. BEAMAN.

Suffolk.   November 21, 1919. — February 26, 1920.

Present: RUGG, C. J., BRALEY, DE COURCY, PIERCE, & JENNEY, JJ.

Bills and Notes, Construction. Corporation, Validity of issue of shares, Returns, Liability of director. Deceit. Evidence, Opinion: expert. Words, "Payable."

Upon a promissory note reading, "Four years after date I promise to pay to the order of B two thousand . . . dollars. Payable after three years, at the rate of $500 quarterly, with interest at 6%," $500 of the principal sum became due three years from the date of the note and $500 every three months thereafter during the fourth year.

The word "payable" in negotiable instruments commonly implies imperative obligation on the part of the maker unless accompanied by additional words expressive of option vested in the maker.

The entire capital stock of a Massachusetts corporation, organized in 1898, was owned by three persons. Substantial profits were made each year. At the close of each year, by agreement of the directors, who at all times owned all of or a controlling interest in the capital stock of the company, the net profits were divided among two of the directors and a bookkeeper of the corporation. This division was not proportionate to the holdings of capital stock. The amounts thus allotted to each were credited to their accounts upon the books of the corporation. In 1909, at a time when $24,000, thus credited, stood on the corporation's books to the credit of one of the directors, who was the manager of the business and the holder of a large majority of the capital stock, the stockholders, at a meeting at which all the stock was represented, voted to issue preferred stock in that amount and to transfer it to the majority holder of stock, to be paid for by deducting $20,000 from the amount standing to his credit upon the corporation's books. This was done with the assent of all the stockholders and directors. A subsequent purchaser of the shares of preferred stock thus issued brought an action of deceit for damages alleged by him to have resulted from false representations inducing him to purchase the stock and contended that one of such false representations was that such issue of preferred stock was valid. Held, that such representation was true because the issue of preferred stock was valid.

A purchaser of shares of the capital stock of a corporation cannot maintain against a director of the corporation an action of tort for deceit to recover damages alleged to have been suffered by him by reason of false statements contained in returns made by the corporation to the commissioner of corporations, as

required by St. 1903, c. 437, §§ 45, 46, which were signed and sworn to by the director, where it does not appear that the director ever had any relations with the purchaser before the sale of the stock, or that the director signed the statements with knowledge of their falsity or without belief in their truth or in reckless carelessness as to whether they were true or false.

At the trial of an action at law, where one question related to the validity of an issue of preferred stock to one who was the chief stockholder, one of the directors and the general manager of a Massachusetts corporation, in payment for a sum standing to his credit on the corporation's books which was an accumulation of annual divisions of profits of the corporation, an inquiry of a certified public accountant, not in the employ of the corporation, as to what would be the reasonable minimum compensation for the executive officers of the corporation during a period as to which he had examined the corporation's books of account, properly may be excluded.

FOUR ACTIONS OF CONTRACT by the payee of two promissory notes dated August 25, 1914, against Henry Gerrish, Jr., the maker, and Arthur W. Burke, an indorser, for instalments alleged to be due thereon. Writs dated, respectively, December 13, 1916, March 2 and September 11, 1917, and May 29, 1918; also an action of

TORT OR CONTRACT by Arthur W. Burke against Nathaniel P. Beaman, with a declaration in three counts, the allegations of the first count being that the plaintiff was induced by fraudulent misrepresentations of the defendant, the treasurer of the Parsons Manufacturing Company, to purchase from him on June 3, 1914, fifty shares of the preferred stock of that corporation, the fraudulent representations being statements relating to the amount of business and the financial condition of the corporation, and that "the said shares of stock had been validly issued in accordance with the laws of the Commonwealth of Massachusetts and were fully paid for." The plaintiff in the second count alleged a failure of consideration for such sale, whereby the price paid by the plaintiff for the stock, $5,000, became due to the plaintiff, and the third count was for money had and received by the defendant to the plaintiff's use. Writ dated March 30, 1917.

The five actions were tried together before *Fessenden*, J. The material evidence is described in the opinion. The expert witness, referred to in the fourth numbered paragraph of the opinion, was a certified public accountant. At the close of the evidence Burke asked that the following among other instructions be given to the jury in all the actions:

"9. If the preferred stock of the Parsons Manufacturing Company was issued to the defendant without any consideration passing from the defendant to the corporation, the stock was not fully paid stock and was illegally issued.

"10. Though there was credited to the defendant on the books of the Parsons Manufacturing Company from time to time certain sums of money as a debt of the said corporation to the defendant without a vote of the Directors or of the stockholders declaring a dividend on the stock of the said corporation, the pretended debt of the corporation to the defendant did not exist and stock later issued to the defendant in consideration only of a cancellation of the said pretended debt was issued without consideration and in violation of law.

"11. If the defendant and one Gerrish as shareholders and directors of the Parsons Manufacturing Company had been in the habit of dividing between them the net profits of the business conducted by the said corporation without any vote declaring a dividend on its stock, whatever might have been the rights of the defendant to retain money so withdrawn, a mere book entry transferring money to the credit of the defendant would not create a legal indebtedness of the corporation to the plaintiff but the money remained undivided profits belonging to and in the possession of the corporation."

Burke also asked that the following instructions be given to the jury in his action against Beaman:

"24. If the plaintiff bought from the defendant stock in the Parsons Manufacturing Company in reliance upon false representations of fact contained in a Certificate of Condition of the Parsons Manufacturing Company signed and sworn to by the defendant and filed with the Commissioner of Corporations, the plaintiff is entitled to recover from the defendant in this action.

"25. On all the evidence the Parsons Manufacturing Company was not indebted to the defendant in 1909 in the sum of $20,000 and the preferred stock issued to him at that time did not become fully paid stock as a result of a cancellation of the said supposed indebtedness to the defendant."

Burke further asked that the following instructions be given to the jury in all the actions against him:

"23. If the defendant Burke indorsed the notes in suit in reliance upon false representations of fact in a Certificate of Condition of the Parsons Manufacturing Company, signed and sworn to by the plaintiff and filed with the Commissioner of Corporations, the plaintiff cannot recover against the defendant Burke.

"24. On all the evidence the Parsons Manufacturing Company was not indebted to the plaintiff in 1909 in the sum of $20,000, and the preferred stock issued to him at that time did not become fully paid stock as a result of a cancellation of the said supposed indebtedness to the plaintiff."

Burke also asked that the following instructions be given to the jury in the actions for instalments alleged to be due on the notes in suit previous to their final due date:

"A. The provision in the note in suit 'payable after two years at the rate of $500 quarterly' means as a matter of law that the maker or indorser had the right if he chose to make payments on account before it fell due, but does not impose on them an obligation to pay before the expiration of the number of years named at the beginning of the instrument as the date when the money should be paid.

"B. The first part of the note in suit is a complete promise to pay a specified number of dollars on a specified date and standing by itself would be a complete negotiable instrument and the subsequent provision 'payable after one year at the rate of $500 quarterly' should be interpreted in harmony with the rest of the note and not in contradiction to it.

"C. Without a provision in a note giving the maker an option to pay in instalments before maturity, the maker would have no right to make such payments in advance and would be liable for interest on the whole amount of the note until maturity.

"D. On all the evidence this action was prematurely brought.

"E. On all the evidence the provision in the note in suit ' payable after two years at the rate of $500 quarterly' meant that the maker and indorser had an option to pay before it fell due but not that they were bound to make any payment before the expiration of the number of years named in the earlier part of the note as the date when it must be paid.

"F. If you find that the defendant Gerrish by inserting in the note in suit the provision that it was payable after a specified

number of years at the rate of $500 quarterly so that he could if he chose make the payments in instalments in advance of the time when he had to pay the whole of it in accordance with the earlier provisions of the note and the plaintiff understood that it was put in there for that purpose then you must find for the defendant Burke because this action was brought before any money was due the plaintiff on the note in suit."

All of the foregoing requests for instructions were refused by the judge.

The judge directed Burke to elect between the counts in the action in which he was plaintiff, and he elected to go to the jury on the first count only.

The judge submitted in each action a special question to the jury, which, with the jury's answer thereto, was in substance as follows:

"Did . . . Beaman and Henry Gerrish, Jr., conspire and confederate together to deceive and defraud Burke in the manner set forth by Burke in his declaration?" The jury answered "No."

The jury found for the plaintiff in the first four actions, the verdict in the first action being $631.25; in the second action, $631.25; in the third action, $1,262.50, and in the fourth action, $1,893.75. In the fifth action the finding was for the defendant. Burke alleged exceptions in all the actions.

*S. R. Wrightington*, for Burke.

*G. Hoague*, for Beaman.

RUGG, C. J. Four of these actions are in contract to recover instalments alleged to be due upon two promissory notes payable to the order of Beaman, signed by Gerrish as maker and Burke as indorser, these two being defendants in each of these actions. The fifth action, as it finally went to the jury upon count one alone of the declaration, is in tort by Burke against Beaman alleging the purchase from him by Burke of fifty shares of stock in a corporation, induced by Beaman's deceit in misrepresenting the assets and liabilities of the corporation and other facts material to the value of the stock.

1. No question now is made respecting the signatures or protest of the notes. It is contended that three of the actions on the notes are prematurely brought. That contention rests on the form of the notes. One note, typical of the others, is of the tenor following, as far as concerns this point, "Four years after date

I promise to pay to the order of Nathaniel P. Beaman Two Thousand and no/100 Dollars. Payable after three years, at the rate of $500.00 quarterly, with interest at 6%." Although not phrased with elegance, the intent of the parties is plain enough from the terms of this contract. As matter of construction these words mean that beginning with the expiration of three years from the date of the note, the sum of $500 is to be paid quarter yearly in such way that the entire principal will be paid at the expiration of four years from date. If it stood alone, the first sentence would be a clear and single promise to pay on four years' time. That sentence, however, does not stand alone. It is modified by the second sentence, which explains and qualifies the simplicity of the earlier sentence by requiring the payment to be made in equal quarterly instalments during the final year before the ultimate maturity of the balance. The word "payable" in negotiable instruments, commonly implies imperative obligation on the part of the maker unless accompanied by additional words expressive of option vested in the maker. As thus construed, with rational effect given to all the words used, the two sentences, which together express the promise, are not mutually repugnant but are harmonious and consistent. *Ewer* v. *Myrick*, 1 Cush. 16.

2. The controversy centres about the purchase by Burke in 1914 of fifty shares of the preferred stock of the Parsons Manufacturing Company organized under Massachusetts laws in 1898. The entire capital stock par value $10,000 was paid in originally by a brother of Beaman, and was in 1900 purchased by him of his brother's executors. Within a short time thereafter, Gerrish purchased $1,000 of par value of the common stock. For a time a bookkeeper, Crosby, owned $2,000 par value of the stock, which later was acquired by Gerrish. One share was held by William S. Beaman, another brother of Nathaniel P. Beaman. From 1902 to 1914 the directors of the corporations were the two Beamans and Gerrish. The testimony of Nathaniel P. Beaman, which was not contradicted and upon which Burke relies as showing that the stock purchased by him was not validly issued, was as follows: "that at the end of each financial year of the corporation the net profits made by the company were ascertained in the usual way by agreement of Nathaniel P. Beaman, Gerrish and Crosby, and the proportion that Beaman and Gerrish should receive was agreed

upon and transferred on the books to them; this proportion was not strictly in accordance with the amount of stock held by each; that Gerrish received at first one third of the net profits and afterwards one half of the net profits, and Beaman received the balance; that from 1900 to and including 1914 substantial profits were made every year which were divided as above set forth; that no preferred stock was issued until the fall of 1909; that at that time owing to the fact that he had withdrawn only a portion of his share of the profits credited to him upon the company's books, there was due to him from the company a sum in excess of $24,000; that as he was about to undergo a major operation which might prove fatal, Gerrish suggested to him that preferred stock to the amount of $20,000 should be issued by the company, and accordingly at a meeting duly held, at which all of the stockholders of the company were represented, it was voted to issue preferred stock to the amount of $20,000 to him; that it was paid for by him by deducting the sum of $20,000 from the amount due to him from the company, leaving a balance due on his account of something over $4,000; that this arrangement was assented to by all of the stockholders and all of the directors."

The preferred stock issued to Nathaniel P. Beaman under these circumstances was validly issued. If the proportion of the profits credited to Nathaniel P. Beaman on the books of the corporation be treated as dividends not collected but left with the company, the one who chiefly was harmed by this was Beaman, because he owned all the stock of the corporation not owned by Gerrish except the single share held in the name of his brother, and a larger amount was credited to Gerrish than he would have been entitled to as dividends upon his stock and a correspondingly less amount to Nathaniel P. Beaman. If it be treated as payment of salary, no salary or payment in way of compensation for services rendered by Nathaniel P. Beaman having been made although he was at all times the manager of the business, that also was a matter about which he and Gerrish were mainly concerned. The entire business of the corporation for a long series of years was conducted by Nathaniel P. Beaman and Gerrish. That was the usual course of conduct of the affairs of the corporation. They constituted a majority of the board of directors and during most of the period held all the stock with the exception of a single share, the beneficial

interest of which apparently belonged to Nathaniel P. Beaman although held by his brother. Even if owned absolutely by the brother, no different conclusion would be reached. That single stockholder seemingly never has complained. All this matter of credit to Beaman was before the stockholders and directors at the meetings of 1909 and was assented to by them. It was in substance and effect approved. Nothing appears to have been concealed or juggled. Fair dealing manifestly required that either by way of dividends on his stock or of compensation for valuable services rendered there was obligation from the corporation to Beaman. There is no suggestion and no foundation for the inference that the amount credited to him on the books of the corporation was excessive or anything more than justly was due him. The precise form which the transactions took is not of much consequence in view of the substantial ratification and approval of the whole matter, both by all the stockholders and directors at meetings duly held, long before Burke had any relation to the corporation. In the light of all these circumstances it cannot be said that the preferred stock issued was not valid. *Lester* v. *Webb,* 1 Allen, 34. *Sherman* v. *Fitch,* 98 Mass. 59, 64. *Produce Exchange Trust Co.* v. *Bieberbach,* 176 Mass. 577, 582. *North Anson Lumber Co.* v. *Smith,* 209 Mass. 333. *Albiani* v. *Evening Traveler Co.* 220 Mass. 20, 25.

3. An effort is made to hold Nathaniel P. Beaman responsible for alleged false representations contained in the annual certificates of condition signed by him as one of the directors of the corporation and filed with the commissioner of corporations under St. 1903, c. 437, §§ 45, 46. Even it be assumed that there was evidence tending to show such false statements, there is nothing to indicate that they were signed by Beaman with any fraudulent purpose. There is in the record no foundation for the inference that the statements if false were signed by Beaman with knowledge of their falsity, or without belief in their truth, or in reckless carelessness whether true or false. He had no relations with Burke and the latter testified that, although he had seen Beaman, they had no conversation. Manifestly no representations were made to Burke in the ordinary sense, and Beaman had no purpose or intention that Burke should rely upon the statements in the returns. Therefore, he cannot be held personally

under the circumstances here disclosed. *Nash* v. *Minnesota Title Ins. & Trust Co.* 163 Mass. 574, 578. *Harvey-Watts Co.* v. *Worcester Umbrella Co.* 193 Mass. 138, 146. *Derry* v. *Peek,* 14 App. Cas. 337, 374, 375. The case at bar is distinguishable from *Bates* v. *Cashman,* 230 Mass. 167, and cases of that class, where a positive statement of fact is made as of one's own knowledge when there is no such knowledge, which is the equivalent of reckless disregard of the truth.

There is strong intimation if not a precise declaration to the effect that an action of deceit in favor of one of the general public does not lie against an officer of a domestic corporation for false statements contained in such certificates as those here in evidence, in the absence of express statutory provision to that end, in *Hunnewell* v. *Duxbury,* 154 Mass. 286, 288. See *Cheney* v. *Dickinson,* 96 C. C. A. 314; 172 Fed. Rep. 109. Compare *Ver Wys* v. *Vander Mey,* 206 Mich. 499.

It is a quite different matter to hold the corporation itself bound or affected by such returns, *Steel* v. *Webster,* 188 Mass. 478, 480, *Brackett* v. *Commonwealth,* 223 Mass. 119, 127, or to hold directors to a liability specifically imposed by statute based on falsity in the return, *Felker* v. *Standard Yarn Co.* 148 Mass. 226, or when representations are made to a commercial agency or otherwise for the express purpose of securing credit, *Davis* v. *Louisville Trust Co.* 104 C. C. A. 24; 181 Fed. Rep. 10, *Eaton, Cole & Burnham Co.* v. *Avery,* 83 N. Y. 31, 34, or to hold promoters for false representations in a prospectus, *Peek* v. *Gurney,* L. R. 6 H. L. 377.

It is not necessary to consider what liability there may be, if any, where the connection between the representation and the person relying upon it is closer than here disclosed, or where the purpose of the person making the statement is fraudulent. The decisions of courts of other States, upon which reliance is placed by Burke, are founded upon different statutes or upon other principles not prevailing here and need not be reviewed one by one.

4. The inquiry of the expert witness, as to the reasonable minimum compensation for the executive officers of the Parsons Manufacturing Company during the period which he examined, rightly was excluded. It does not appear that he was qualified to testify to the point or that his examination of the books covered

time sufficient to make his evidence pertinent. No offer of proof was made. The record does not disclose grounds to which such testimony would have been relevant.

It follows from what has been said that all the requests for rulings, which need not be recited in detail, rightly were denied.

*Exceptions overruled.*