GEORGE H. GILBERT MANUFACTURING COMPANY *vs.*
BERNARD GOLDFINE & others.

Suffolk.   December 8, 1944. — February 7, 1945.

Present: FIELD, C.J., QUA, DOLAN, & RONAN, JJ.

*Corporation,* Officers and agents, Sale of assets, Gift of assets. *Sale,*
Validity. *Gift. Payment. Volunteer. Contract,* Consideration.

A corporation was not entitled to maintain a suit in equity for an ac-
counting against one who, when sole owner of all of its capital stock
and its treasurer and a director, in alleged breach of his fiduciary
duty to it sold some of its property to himself and a partner and made
a profit from immediate resales by the partnership, where it appeared
that the sale by the corporation was at a fair price, that the facts
relating to the sale were known to, and the sale acquiesced in by, two
persons who with the defendant held all the offices in the plaintiff
and constituted an executive committee of the board of directors
having the powers of the board between meetings and who had made
a contract with the defendant for later purchase of part of the capital
stock, and that a by-law permitted the defendant to deal in the plain-
tiff's behalf with any firm of which he was a member if his interest
therein was known to the plaintiff's board of directors or a majority
of them.

The provisions of G. L. (Ter. Ed.) c. 156, § 42, were not applicable to a
sale by a corporation of assets which were not all of its assets.

The provisions of G. L. (Ter. Ed.) c. 156, § 42, as amended, respecting
"the sale, lease or exchange of all" property and assets of a business
corporation, relate to the internal management of the corporation
and are designed only for the protection of minority stockholders.
Per RONAN, J.

A promise by a corporation, in substance to reimburse a stockholder for
a sum which, when purchasing all its stock, he had paid to a third
person to induce him to refrain from bidding for the stock, was with-
out consideration although it was made by vote of an executive com-
mittee having the powers of the board of directors and was assented
to by all those interested in the corporation and there were no credi-
tors of the corporation involved in the matter, and the stockholder
could not recover an unpaid balance of such sum from the corpora-
tion; but the corporation could not recover from him a part of such
sum which it had voluntarily paid to him.

Where the rights of creditors are not impaired, corporate funds may be
used to pay the personal indebtedness of its officers or such funds may
be transferred to them as gifts, if this is done with the assent of all
the officers and stockholders. Per RONAN, J.

BILL IN EQUITY, filed in the Superior Court on December 3, 1937.

The case was heard by *Broadhurst, J.*

In this court the case was submitted on briefs.

*C. J. Miller & I. Springer,* for the plaintiff.

*F. H. Chase,* for the defendant.

RONAN, J.   This is a bill in equity seeking an accounting from Goldfine, hereinafter called the defendant, of the proceeds from the sale of a lot of worsted goods belonging to the plaintiff, and also the sum of $5,000 which it was alleged it was induced to pay to the defendant by his false and fraudulent representation that he had paid this amount to one Newman for the benefit of the plaintiff. The defendant's answer contained a counterclaim for $2,000. The plaintiff appealed from an interlocutory decree overruling its exceptions to the master's report and confirming the report, and from a final decree dismissing the bill as to the plaintiff and establishing the counterclaim.

The facts appearing in the master's report may be briefly summarized. The plaintiff's stockholders on January 18, 1932, voted to wind up the business and authorized the directors to dispose of its property. The defendant on February 24, 1933, purchased all the outstanding capital stock of the plaintiff for $160,125, and pledged the stock with the bank from which he had borrowed this sum. This bank also insisted that the defendant should remain the sole stockholder until the loan was paid. Prior to February 24, 1933, the defendant had negotiated with Shoolman and McDonald, both of whom were men of wide and varied business experience but had no knowledge about textiles, for the acquisition by each of them of one third of the stock upon payment of one third of its cost to the defendant, and on the day last mentioned a written agreement to this effect was executed by these three. The stock was released by the bank on November 15, 1933, and one third of the shares was transferred to Shoolman and a like amount to McDonald. These three thereafter owned all the capital stock until 1935 when McDonald and the defendant sold their stock to Shoolman, who has since owned the entire stock.

The plaintiff had on hand on February 24, 1933, about one hundred seven thousand five hundred yards of woolens. A part of this lot was "streaky" because of defective dyeing, but the greater portion of it was in perfect condition and in all likelihood could be sold separately in small lots over a period of time. The plaintiff had endeavored for a year to sell these woolens in a single lot, and the best offer it received was fifty cents a yard. The defendant, soon after he began to negotiate for the purchase of the capital stock, sought a customer for these goods but secured none willing to pay more than $45,000. The defendant and his brother were copartners dealing in woolen goods under the name of the Strathmore Woolen Company, hereinafter called Strathmore. It was the intention of Shoolman, McDonald and the defendant from the beginning to liquidate all the assets of the plaintiff as soon as circumstances would permit and to divide the profits equally, to sell the woolen goods in a lot for the best price obtainable and to apply the proceeds to the payment of the defendant's loan at the bank, thereby releasing the stock in order that it could be divided between them, and then to wind up the plaintiff promptly in order to avoid carrying charges and taxes.

Shortly before February 24, 1933, at a conference between Shoolman, McDonald and the defendant with reference to the joint purchase of the capital stock, the defendant told them that he was unable to secure an offer of fifty cents a yard for the sale of the woolens in one lot, and that Strathmore would pay fifty cents a yard provided he could get some one to share half the deal with Strathmore. Shoolman and McDonald knew that the defendant and his brother comprised the Strathmore firm. These three orally agreed that Strathmore would purchase this merchandise at the said price in its own name for the joint account of Strathmore and one Axelrod, "no returns, and no allowances." Shoolman and McDonald knew that the buyers intended to sell at a profit if they could. Fifty cents a yard was a fair price for the sale of this merchandise in a single lot. Strathmore purchased

the goods in March, 1933, and in the same month sold them to various persons but principally to one Cooper, a dealer, who bought more than ninety-eight thousand yards at sixty-five cents a yard on credit to October 1, 1933, payable in monthly instalments and under the following terms: "Off Price, No returns, No claims, No allowances." Strathmore disposed of the merchandise for a gross amount of $68,686.25 and paid the plaintiff $50,000 in June, 1933, and in March, 1936, paid the balance, $2,168.75, of the purchase price. Strathmore divided the profits equally with Axelrod, and its share of the profits amounting to $8,409.16 was divided between the defendant and his brother as members of the Strathmore firm.

Shoolman and McDonald knew as early as March 28, 1933, that Strathmore had resold all the woolens, and they also knew the name and address of the purchaser in each instance and the quantity of goods that each purchaser had bought from Strathmore. They knew on April 15, 1933, that all this merchandise had been charged upon the plaintiff's books to Strathmore at fifty cents a yard and for the total sum of $52,168.75. Neither Shoolman nor McDonald knew what profit the defendant had made out of the resale of the woolens until after the present bill was filed, although the defendant had informed Shoolman in December, 1934, that he had made $3,000 and offered to pay $700 to Shoolman when the latter asked him what profit he had made, but Shoolman made no reply to this offer. Thereafter, when accountings were had between Shoolman, McDonald and the defendant as individuals and between themselves and the plaintiff, and when Shoolman purchased the capital stock held by McDonald and the defendant, and when Strathmore made its final payment in March, 1936, no question was raised about the profit that Strathmore had made from the resale of the woolens.

This bill is not brought by Shoolman to recover a share of the profits of a joint adventure upon which he embarked with McDonald and the defendant, but the bill is brought by the corporation to recover a profit secured by the defendant from the sale of a lot of merchandise owned by the

plaintiff which, it is alleged, the defendant retained in violation of a fiduciary duty owed the plaintiff, and it is further contended that the sale was unauthorized and that the defendant and Strathmore are bound to account to the plaintiff for the full amount which they received from a resale of the goods.

The defendant at the time of this sale to Strathmore was the sole owner of all the outstanding capital stock other than the interest that Shoolman and McDonald might have had by virtue of the buy and sell agreement they had with the defendant. The defendant was also then the treasurer and a director of the corporation, and a copartner in Strathmore with his brother. As a director he occupied a fiduciary relation to the corporation, and his primary duty was to act solely in the interest of the corporation; and if, by subordinating his obligation to the corporation to his personal pecuniary interests, he secured an individual financial gain, then he is accountable to the corporation for such gain. *United Zinc Co.* v. *Harwood,* 216 Mass. 474. *Lazenby* v. *Henderson,* 241 Mass. 177. *Buckman* v. *Elm Hill Realty Co. of Peabody,* 312 Mass. 10. But a contract between a corporation and a director is valid if, with full knowledge of all the facts, it is assented to by all the officers and the stockholders. *Warren* v. *Para Rubber Shoe Co.* 166 Mass. 97. *Hays* v. *Georgian Inc.* 280 Mass. 10. *Dome Realty Co.* v. *Gould,* 285 Mass. 294. *Foster* v. *Bowen,* 311 Mass. 359. Shoolman, McDonald and the defendant were all the persons who had any interest in the capital stock and they expressly assented to the sale, and these three constituted the executive committee which by virtue of a by-law had the power of the board of directors between the meetings of the board. G. L. (Ter. Ed.) c. 156, § 26. *McNeil* v. *Boston Chamber of Commerce,* 154 Mass. 277. *Young* v. *Canada, Atlantic & Plant Steamship Co. Ltd.* 211 Mass. 453. Moreover, there was a by-law that permitted the defendant to deal in behalf of the plaintiff with any other corporation or firm in which he was a director or member if his interest in such corporation or firm was known to the board of directors or a majority of them. Furthermore, as early as

1934 all the offices of the plaintiff were held by these three stockholders, and all of them acquiesced in the sale. *Foster* v. *C. G. Howes Co.* 230 Mass. 43. *Beaman* v. *Gerrish,* 235 Mass. 79. *Underwood* v. *Lennox,* 242 Mass. 357. *Friend Lumber Co. Inc.* v. *Armstrong Building Finish Co.* 276 Mass. 361. The fact that Shoolman, McDonald and the defendant agreed before they had actually acquired an interest in the plaintiff to have this lot of merchandise sold to Strathmore is immaterial because the sale was not carried out until after all the stock had been transferred to the defendant. The master found that the sale was for a fair price. A corporation cannot complain of a sale of its assets which was carried out with the assent of all its officers and stockholders. *Dome Realty Co.* v. *Gould,* 285 Mass. 294. *Hennessey* v. *Nelen,* 299 Mass. 569. *Medlinsky* v. *Premium Cut Beef Co., ante,* 25.

There was no vote of two thirds of the stockholders authorizing the sale of the merchandise. The plaintiff contends that the sale was in violation of G. L. (Ter. Ed.) c. 156, § 42, which required such a vote for "the sale, lease or exchange of all its property and assets, including its good will, upon such terms and conditions as it deems expedient." This section was amended in a matter not now material by St. 1943, c. 38, § 1. There are set out in the report facts relating to the principal assets of the plaintiff, the making of a profit of $50,000 by each of the three stockholders as a result of the sale of the merchandise inventory, the bank deposit, the compromise of a suit against the Commonwealth, and the character and quantity of the assets remaining after this division of the profits, which amply warranted the finding of the master that on February 24, 1933, the plaintiff had no outstanding indebtedness except current taxes. The enumeration of the assets shows that the sale of the merchandise was not a sale of all its property within the provisions of the said section. *Susser* v. *Cambria Chocolate Co.* 300 Mass. 1. *Atlas Finance Corp.* v. *Trocchi,* 302 Mass. 477. The sale did not render the plaintiff insolvent nor impair the rights of its creditors; and, even if it had, creditors could not attack the transfer

merely because of the lack of such a vote and neither can the corporation, because this statute and others similarly phrased relate to the internal management of corporations and were designed only for the protection of minority stockholders. *Royal Indemnity Co.* v. *American Bond & Mortgage Co.* 289 U. S. 165. *Greene* v. *Reconstruction Finance Corp.* 100 Fed. (2d) 34. *Bean* v. *Commercial Securities Co.* 25 Tenn. App. 254.

We next discuss the liability of the defendant to reimburse the plaintiff for $3,118.65 received by the defendant in accordance with a vote on August 7, 1934, of the executive committee to pay him $5,118.65 and the liability of the plaintiff to pay $2,000 of this amount which never has been paid.

At the time the defendant was negotiating for the purchase of the capital stock of the plaintiff, he induced one Newman, who was also endeavoring to buy the stock, to withdraw as a bidder by the payment of $1,000 to Newman and the promise to pay him $1,500 more when the defendant acquired the stock and $2,500 if the transaction proved to be profitable to the defendant. He paid Newman $4,300 in all. Shoolman and McDonald, before they agreed to buy a part of the stock, learned from the defendant that he had promised to pay $5,000 to a prospective purchaser in order to have him retire as a bidder, and these three at first agreed that this $5,000 should be considered as a part of the cost of the stock and that each should pay one third, but they subsequently agreed that the plaintiff should pay this amount to the defendant "as a company expense." These three as members of the executive committee voted that the plaintiff recognize an indebtedness of $5,118.65 due the defendant, for the payment of which he was to be paid $3,118.65 forthwith and the balance of $2,000 at a later date. The defendant seeks by his counterclaim to recover this balance.

A claim by a purchaser against a seller for an expense incurred by the purchaser in successfully stifling competition so that he might become a purchaser on his own terms, or at least on terms more favorable to him, has a strange sound. If we lay aside the nature of the claim, we are next

confronted with the fact that the defendant never paid Newman $5,000. He paid $3,500 and $800 more after Newman had brought suit, a total of $4,300. We are unable to ascertain from the master's report whether this last payment was made before or after the vote of the executive committee was taken. The vote of the committee, comprising as it did all the stockholders, was sufficient to authorize the payment to the defendant. Where the rights of creditors are not impaired, corporate funds may be used to pay the personal indebtedness of its officers or such funds may be transferred to them as gifts, if this is done with the assent of all the officers and stockholders, *Medlinsky* v. *Premium Cut Beef Co.*, ante, 25, 32, and cases cited, and, the payment having been voluntarily made by the plaintiff, with such assent, it cannot be recovered back. *Dome Realty Co.* v. *Gould*, 285 Mass. 294. *Hinckley* v. *Barnstable*, 311 Mass. 600.

The plaintiff, however, received nothing for making the part payment, and there was no consideration for any promise to pay the balance. There is nothing in the master's report to support a contention that the vote, which dealt only with the expense to the defendant on account of Newman, constituted an account stated. *Chase* v. *Chase*, 191 Mass. 556, 562. *Berwin* v. *Levenson*, 311 Mass. 239, 245. The finding that the defendant was owed this balance was wrong because the only conclusion that is consistent with and warranted by the subsidiary findings of the master is that the vote to pay the balance is not supported by any consideration. The defendant has no enforceable claim. *Lyon* v. *Williams*, 5 Gray, 557. *Cardoza* v. *Leveroni*, 233 Mass. 310. *Burrows* v. *Burrows*, 240 Mass. 485. *Lewis* v. *Chapin*, 263 Mass. 168. *Reardon* v. *Whalen*, 306 Mass. 579. *Handy* v. *Eliot Savings Bank*, 307 Mass. 446. *Rock* v. *Rock*, 309 Mass. 44.

We find nothing in the report that indicates there was error in the finding of the master that the defendant was not acting in a fiduciary capacity for the plaintiff in the purchase of the merchandise for Strathmore and Axelrod. The plaintiff's contention is untenable that this finding

first appears in the final draft of the report after the master had heard the parties on the draft report. This exception to the report was properly overruled. The twenty-third or last exception dealing with damages has become immaterial. All the remaining exceptions, except the twenty-second, are based upon the ground either that a particular finding is not supported by the evidence or that the master has refused to make certain additional findings. The appropriate method of raising these questions was by a motion to recommit. No such motion was filed. The twenty-second exception challenging the finding that the plaintiff owed the balance of $2,000 to the defendant must be sustained for reasons already mentioned. That finding should be struck from the report.

It follows that the interlocutory decree confirming the report must be reversed and a new interlocutory decree entered confirming the report as modified. The final decree must be modified by striking out the provision establishing the counterclaim and substituting a provision dismissing the counterclaim, and as modified is affirmed.

*So ordered.*