GOVERNMENT OF THE VIRGIN ISLANDS,
Appellant

v.

OMAR BROWN

GOVERNMENT OF THE VIRGIN ISLANDS,
Appellant

v.

AIMEE ESTORNEL

GOVERNMENT OF THE VIRGIN ISLANDS,
Appellant

v.

JACOB M PAULUS

Nos. 11457 - 11459

United States Court of Appeals

Third Circuit

Argued January 25, 1955

Decided April 18, 1955

*See, also, 221 F.2d 402*

CROXTON WILLIAMS, Charlotte Amalie, St. Thomas, Virgin Islands, *for appellant*

WILLIAM P. BAILEY, Charlotte Amalie, St. Thomas, Virgin Islands, *for appellees*

Before BIGGS, *Chief Judge*, MARIS and MAGRUDER, *Circuit Judges*

BIGGS, *Chief Judge*

These are appeals from three judgments of the District Court of the Virgin Islands rendered in a consolidated trial of causes of action tried to the Court. In each suit the Government of the Virgin Islands, the plaintiff, was denied recovery against an endorser on a promissory note. These appeals followed.

In 1945, the Municipality of St. Thomas and St. John of the Virgin Islands[1] enacted a Municipal Ordinance "To Help Native Industries and Small Businesses" approved

---

[1]Under the provisions of section 10 of the Revised Organic Act of the Virgin Islands (prec. 1 V.I.C.) enacted July 22, 1954, 68 Stat. 502, 48 U.S.C. § 1576, the Municipality of St. Thomas and St. John ceased to exist on January 10, 1955, and all its functions, property, personnel, records, unexpended balances of appropriations, and funds were transferred to the Government of the Virgin Islands. By order of this court entered January 25, 1955, the Government of the Virgin Islands was accordingly substituted as the party-plaintiff in these suits.

November 23, 1945, which provided for the granting of small loans to selected individuals. Section 4 of that Ordinance provides: "No loan shall exceed three ($3,000) thousand dollars; loans shall be made at the rate of 4% interest per annum to be repaid within a period of five years. Payments shall begin six (6) months after the date of the loan and shall continue in equal semiannual installments."

On May 27, 1946, under the authority of this Ordinance, the Municipality lent $3,000 to Halvor Stridiron to aid him in the development of a local candy business. Six notes evidencing the debt were executed by Stridiron, each containing the following provisions: "60 months after date I promise to pay to the order of the Municipality of St. Thomas and St. John at the Office of the Commissioner of Finance Five Hundred Dollars value received, with interest at 4 per cent. Said principal sum to be paid in 10 installments of 50 dollars each, payments with interest on unpaid balance to be made on the 26th day of November, 1946, and semi-annually thereafter until fully paid." Each note was endorsed on the back by a different individual beneath the following statement: "I the undersigned endorser of this note hereby expressly waive presentment, demand, protest and notice of protest of this note at the time of maturity." The endorsers on the three notes here involved were respectively Brown, Estornel, and Paulus, the defendants.

Stridiron on February 3, 1947, paid three hundred and sixty dollars on the loan. Thereafter, no further payments were made and no action was taken by the Municipality to obtain payment of the other installments. At some date before the last installment was due in 1951, Stridiron sold the equipment used in his candy business and left the Islands. In 1953, the suits at bar were instituted by the Municipality against three of the endorsers, the defendants here, to collect the balances due on the notes they endorsed.

Despite the first sentence written on the front of each note which indicates only an obligation of the maker to repay the total amount loaned in sixty months, each of the notes is nonetheless an installment note. This is so because the second sentence of each note uses specific language requiring the payment of fixed fractional amounts at regular intervals and that language is controlling over the more general language of the first sentence. Cf. Beaman v. Gerrish, 1920, 235 Mass. 79, 126 N.E. 352. Also, the fact that each note was executed under the authority of the Native Industries Ordinance, quoted above, requiring that loans be repaid in installments indicates that the obligations were installment notes. Consequently, the Court below and the parties properly have treated Stridiron's obligations as installment notes.

■ ■ The Negotiable Instruments Law is in effect in the Islands.[2] That law sets the standard of negotiability and Stridiron's notes meet that test. Each note is "an unconditional promise in writing made by one person to another signed by the maker engaging to pay . . . at a fixed or determinable future time a sum certain in money to order or to bearer." See sections 184 and 1, ch. 34 of Title II of the Code (1921) of St. Thomas and St. John (11 V.I.C. §§ 351 and 1). And the fact that these are installment notes does not affect their status as negotiable instruments, for "The sum payable is a sum certain within the meaning of this act, although it is to be paid . . . [b]y stated installments." See section 2, ch. 34 of Title II (1921 Code; 11 V.I.C. § 2). Consequently, the NIL determines the liability of the defendants as endorsers.

■ ■ Ordinarily, an endorser is liable on a negotiable note only after there has been due presentment and notice of dishonor. See section 66 and articles VI and VII, ch. 34 of Title II (1921 Code; 11 V.I.C. § 97). However, pre-

[2]Chapter 34 of Title II of the (1921) Code of St. Thomas and St. John (11 V.I.C. § 1 et seq.).

sentment and notice of dishonor may both be waived. See sections 82(3) and 109, ch. 34 of Title II (1921 Code; 11 V.I.C. §§ 123, 161). In their endorsements in these cases the defendants specifically waived "presentment" but there was no specific waiver of notice of dishonor. Although it would seem that a waiver of presentment alone would necessarily obviate the requirement of notice of dishonor since the presentment proceedings are normally the occasion of the dishonor itself, the cases on the point are in conflict. Compare Hall v. Crane, 1913, 213 Mass. 326, 100 N.E. 554 with Baumeister v. Kuntz, 1907, 53 Fla. 340, 42 So. 886. Nevertheless, by the terms of section 111, ch. 34 of Title II (1921 Code; 11 V.I.C. § 163), the specific waivers of "protest and notice of protest" in the endorsements in these cases effectively dispense with the necessity of notice of dishonor. That section of the statute provides that "A waiver of protest, whether in case of a foreign bill of exchange or other negotiable instrument, is deemed to be a waiver not only of a formal protest, but also of presentment and notice of dishonor."

Thus, the presentment and notice of dishonor, normally a condition of the liability of an endorser, were waived, but these were stated in the endorsements in these cases to be waived only "at the time of maturity." The Trial Judge in his supplemental opinion discussed this issue concerning the extent of the waiver and said: "[M] uch emphasis has been laid . . . on the words 'at maturity.' The Court understands the waiver to mean merely that when the note as a whole fully matured the endorsers waived any right to presentment, demand, or notice to themselves at that time and subjected themselves to suit thereon. The Court does not understand their waiver to mean that they, the endorsers waived the duty of the Municipality to make presentment and demand on the maker at the end of each statutory period of six months, since failure to make pay-

ments at these times and failure of the Municipality to make demand therefor impaired the position of the endorsers."

■ ■ We are of the contrary view. We are of the opinion that the waiver of presentment and notice of dishonor "at the time of maturity" dispensed with the necessity of presentment and notice at the time each installment was due. The maker of a note such as these is of course liable for each installment as it falls due. And as was said in Berkowitz v. Kasparewicz, 1936, 121 Conn. 140, 145-146, 183 Atl. 693, 695, 104 A.L.R. 1326, "The liability of the indorser upon each installment of a note of this character is the same as if there had been a series of notes coming due every six months . . . in the case of each installment as it became due, to hold the indorser, proper presentment to the maker and notice to the indorser was required. If such notice was not given, the indorser was relieved to the extent of that payment of principal and interest, . . ." See also, e.g., Chamberlain v. Cobb. 1924, 129 Wash. 549, 225 Pac. 414 and Roberts v. International Bank, 1928, 58 App. D.C. 87, 25 F.2d 214. In other words, since under section 66 of the NIL, ch. 34 of Title II (1921 Code; 11 V.I.C. § 97), a general endorser warrants the payment of a note according to its tenor, the endorser of an installment note is liable for each installment, and since presentment and notice are normally required to hold an endorser liable, presentment and notice are necessary for every default in the payment of an installment. Conversely, a waiver of presentment and notice on an installment note would seem to constitute a waiver of those requirements for every default in the payment of an installment.

The court below stated in the quoted portion of its opinion that it was of the view that the waiver did not pertain to any but the final installments because waiving presentment and notice "impaired the position of the endorsers."

But, any waiver of these requirements designed for the protection of endorsers results in an impairment of their position. It is true that an endorser might waive presentment and notice only as to the final installment but no greater reason is apparent for waiving the requirements as to that installment than waiving them as to the other installments. Therefore, it is unlikely that an endorser would waive the necessity for presentment and notice only in the case of the final installment.

 As we have indicated, in determining the extent of the waivers in these cases it is the construction of the words "at the time of maturity" that is in issue. "Maturity, when applied to commercial paper, means the time when the paper becomes due and demandable, that is, the time when an action can be maintained thereon to enforce payment" and "Where a note is made payable in installments . . . such installments as have become due are deemed to have matured." 10 C.J.S. Bills and Notes, § 245, pp. 737, 738. It would follow that, under the notes sued on, a payment matured at the time each installment became due. It is argued, however, that the fact that the noun "maturity," in the phrase "at the time of maturity," is in the singular indicates that the waivers went only to one maturity date. We reject this argument because there were a series of maturity dates requiring presentment and notice at the time each installment became due and also because it seems unlikely that the waivers were intended to pertain to only one of those maturity dates. We thus hold that the endorsements constituted a waiver of presentment and notice as to all of the installments of each note. Consequently, it is no defense for the endorsers that the plaintiff made no demands on the maker for payment and furnished no notice to them that the notes were in default.

 The defendants contend nonetheless that they are not liable because of the neglect of the plaintiff in fail-

ing to take action to collect or secure the payment of the installments as they became due. Section 120(6), ch. 34 of Title II (1921 Code; 11 V.I.C. § 182(6)), does provide that a person secondarily liable is discharged by "an agreement binding upon the holder to extend the time of payment." Here there is no evidence of an agreement to extend the time of payment binding upon the plaintiff. Section 124, ch. 34 of Title II (1921 Code; 11 V.I.C. § 186), provides that if a note is "materially altered" it is voided as to all non-assenting parties to the instrument, and section 125 (3) (11 V.I.C. § 187(3)) specifies that a change in the time of payment is a "material alteration." But this provision is pertinent only in the case of a physical alteration of the instrument, which did not occur here, and applies in any case only where the effect of the instrument is changed. See Britton, Bills and Notes 1058-1060. Here, the failure of the plaintiff to take action to collect did not constitute any change in the effect of the instruments amounting to an alteration.

The defendants finally argue that they are not liable because the plaintiff failed to comply with the requirements of section 4 of the Native Industries Ordinance quoted above. The court below accepted this position and stated in its supplemental opinion: "Under this Ordinance the Municipality, who is the holder, is required to demand from the maker payment of fixed installments every six months. It is clear that the holder is under a duty to make some kind of demand or attempt to collect from the maker, the person primarily liable, as provided by law, and the endorsers or persons secondarily liable had a reasonable right to expect that this duty would be fulfilled . . . The duty imposed by the Statute was for the protection of Municipal funds as well as for the protection of the endorsers, and the endorsers are entitled to expect and demand that that duty be carried out, and if it is not they

have a valid defense to any action on the notes by the Municipality."

■ The Ordinance does provide that "Payments shall begin six (6) months after the date of the loan and shall continue in equal semi-annual installments." Undoubtedly, this provision effectively fixes the terms of any loans and indicates the duty of public officials under the Ordinance. But, there is nothing to show that this provision was intended in any way to protect the endorsers of notes exchanged for loans under the Ordinance. In fact, there is nothing to suggest that the framers of the Ordinance contemplated the legal effect of the use of negotiable notes and endorsements in transactions under the Ordinance. See the "Statement of Motives" in the preamble of the Ordinance. Requiring notes to evidence the loans and endorsements to secure them was merely the discretionary use of a normal business technique by the officials administering the Ordinance. Section 3(b) 3 of the amended Ordinance, approved November 28, 1945, authorizes "Good and reliable endorsers" as one of the acceptable types of security but does not purport to specify the legal effect of the endorsements. It is the business law, the NIL, which is applicable to determine the legal effect of the business techniques employed. The Native Industries Ordinance has no relevance to that determination.

Consequently, under the NIL, ch. 34 of Title II of the Code (1921; 11 V.I.C. § 1 et seq.) the defendants are liable on their endorsements. It should be noted here by way of summary that when endorsers have completely waived the conditions of their liability, as have these defendants, the liability of the endorsers is substantially that of primary parties. See Britton, Bills and Notes 857. Thus, the basic contention of the defendants, which seems to underlie all

of their arguments, that the plaintiff prejudicially has delayed collection from the maker is not relevant.

The judgments of the court below will be reserved.