THE GOVERNMENT OF THE VIRGIN ISLANDS, Appellee

v.

ROY P. GORDON, RALPH PAIEWONSKY,
ISAAC PAIEWONSKY, Appellants

No. 12054

United States Court of Appeals
Third Circuit

Argued January 29, 1957

Decided May 7, 1957

*See, also, 244 F.2d 818*

DANIEL W. AMBROSE, Charlotte Amalie, St. Thomas, Virgin Islands, *for appellants*

LEON B. MILLER, Charlotte Amalie, St. Thomas, Virgin Islands, *for appellee*

Before MARIS, MAGRUDER and KALODNER, *Circuit Judges*

KALODNER, *Circuit Judge*

██ Ralph and Isaac Paiewonsky were indorsers on a promissory note payable to the Government of the Virgin Islands. Having suffered summary judgment against them in a suit on the note in the District Court of the Virgin Islands, they have filed this appeal.

The facts may be summarized as follows:

Under Ordinance of the Municipality of St. Thomas and St. John, Virgin Islands, a government fund was created to help native industries and small businesses by advancing loans to them. Under the authority of this Ordinance,[1]

[1] The Ordinance, approved November 23, 1945, provided in section 4 as follows:
 "No loan shall exceed three ($3,000) thousand dollars; loans shall be

Roy P. Gordon was loaned $3,000. He signed a note dated May 24, 1946, promising to pay to the Municipality sixty months after that date the amount of the loan. The note provided for ten installment payments of $300 each with interest at 4%, the first payment to be made on November 23, 1946, and the other payments semi-annually thereafter. The Paiewonskys signed the note as indorsers and expressly waived "presentment, demand, protest and notice of protest of this note at the time of maturity."

Payments were not made by Gordon in accordance with the terms of the note. On February 9, 1953, he signed a "Memorandum Agreement" in the office of the District Attorney acknowledging the $3,000 indebtedness plus $680 interest, and further stating:

"The Undersigned, in consideration of the forbearance of the said Municipality to institute legal proceedings for the collection of the aforesaid sum of $3,680.00, hereby promises and agrees to pay the same [in specified installments].

"The Undersigned fully understands that this agreement is not in substitution of, but supplemental to any and all written obligations in connection with said indebtedness."

The agreement was witnessed and was "Approved" by Croxton Williams, the Assistant District Attorney. Thereafter, Gordon made several payments totalling $230.00, but no payment was made after June 15, 1953.

This action was brought by the Government of the Virgin Islands[2] against Gordon, as maker, and the Paiewonskys, as indorsers. Gordon filed no answer to the complaint. The Paiewonskys admitted the substance of the

made at the rate of 4% interest per annum to be repaid within a period of five years. Payments shall begin six (6) months after the date of the loan and shall continue in equal semi-annual installments."

[2] Under the provisions of section 10 of the Revised Organic Act of the Virgin Islands enacted July 22, 1954, 68 Stat. 502 (prec. 1 V.I.C.), 48 U.S.C. § 1576, the Municipality of St. Thomas and St. John ceased to exist on January 10, 1955, and all its functions, property, personnel, records, unexpended balances of appropriations, and funds were transferred to the Government of the Virgin Islands.

complaint, and further alleged that they were discharged from liability by virtue of the agreement of February 9, 1953. The Government moved for summary judgment and submitted for the District Court's consideration a copy of the "Memorandum Agreement" and the affidavit of Henry W. de Lagarde, Acting Director of the Virgin Islands Land Authority, deposing that he was in custody of the books recording the Gordon loan and that the amount due thereon was $3,864.89 computed to April 30, 1956.

The Government's motion for summary judgment was granted against Gordon and the Paiewonskys, and it is from the order granting that motion that the Paiewonskys have appealed.

The Paiwonskys here contend: (1) as persons secondarily liable on the note, they were discharged from liability by the agreement to extend the time of payment; (2) since there were disputed questions of fact raised on the pleadings, summary judgment should not have been granted.

In Government of Virgin Islands v. Brown, 3 Cir., 1955 (3 V.I. 529), 221 F.2d 402, this Court ruled on a similar note given to the Municipality of St. Thomas and St. John. In so doing, it was held that the failure of the Government to collect payments on the note as they became due did not, under the Negotiable Instruments Law[3] § 120, discharge persons secondarily liable. That section provides:

> "A person secondarily liable on the instrument is discharged . . . (6) by any agreement binding upon the holder to extend the time of payment, or to postpone the holder's right to enforce the instrument, unless made with the assent of the party secondarily liable, or unless the right of recourse against such party is expressly reserved."

[3]Chapter 34 of Title II of the (1921) Code of St. Thomas and St. John (11 V.I.C. § 182).

Our holding in Government of Virgin Islands v. Brown, supra, was based on the express finding that: "Here there is no evidence of an agreement to extend the time of payment *binding upon the plaintiff*." (Emphasis supplied.) In the instant case, too, there is no such agreement "binding upon the plaintiff."

 It is true that the agreement signed by Gordon and relied upon by the Paiewonskys to relieve them from liability was "Approved" by the Assistant District Attorney of the Virgin Islands. However, the authority and duties of the United States Attorney for the Virgin Islands are defined in the Organic Act[4] and in the Code of St. Thomas and St. John.[5]

The Organic Act provided for the appointment of ". . . a district attorney for the District Court of the Virgin Islands . . ." and for his compensation "from appropriations made for the Department of Justice." It further provided that "The Governor may call upon the district attorney to *advise* him upon any legal questions concerning the administration of the Government of the Virgin Islands." (Emphasis supplied.)

The Code of St. Thomas and St. John defining the "Powers and Duties of the District Attorney" provided that "The District Attorney is the public prosecutor for the district in which he is stationed. He shall personally conduct all prosecutions in the District Court and in his discretion such cases as require his personal attention in all other courts." It also spelled out in detail powers which he could exercise in the prosecution of crimes and public offenses.

Nowhere in the Organic Act or in the Code is the District Attorney (or his assistant) clothed with authority

[4] Organic Act of the Virgin Islands of the United States § 26, 49 Stat. 1807 (1936) (prec. 1 V.I.C.), 48 U.S.C. § 1405y.
[5] Chapter 4 of Title V of the (1921) Code of St. Thomas and St. John (5 V.I.C. § 3501 note).

by virtue of his office to release indorsers on a note such as was here involved.

■ It is well settled that no consideration of public policy can properly induce a court to reject the statutory definition of the powers of an officer, and that anyone dealing with such officer is required to take notice of the extent of authority conferred by law upon him.[6]

In the early case of The Floyd Acceptances, 1869, 7 Wall. 666, at pages 677-678, 19 L. Ed. 169, the Supreme Court said:

"We have no officers in this government from the President down to the most subordinate agent, who does not hold office under the law, with prescribed duties and limited authority. And while some of these, as the President, the Legislature and the Judiciary, exercise powers in some sense left to the more general definitions necessarily incident to fundamental law found in the Constitution, the larger portion of them are the creation of statutory law, with duties and powers prescribed and limited by that law."

". . . the United States is neither bound nor estopped by acts of its officers or agents in entering into an arrangement or agreement to do or cause to be done what the law does not sanction or permit." Utah Power & Light Co. v. United States, 1917, 243 U.S. 389, 409, 37 S. Ct. 387, 391, 61 L. Ed. 791. "Whatever the form in which the Government functions, anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority." Federal Crop Insurance Corp. v. Merrill, 1947, 332 U.S. 380, 385, 68 S. Ct. 1, 3, 92 L. Ed. 10.

In view of the above, the agreement approved by the District Attorney could not bind the Municipality (and its successor, the Government of the Virgin Islands). Since the agreement was not binding upon the Municipality, *Brown* is squarely dispositive and the Paiewonskys cannot be discharged from liability.

[6]It may be noted parenthetically that both Ralph Paiewonsky and Gordon had served as chairman of the Municipal Council of St. Thomas and St. John.

Further, as earlier pointed out, the agreement expressly provided that it "is not in substitution of, but supplemental to any and all written obligations in connection with said indebtedness."

■ With respect to the Paiewonskys' contention that summary judgment could not have been granted, it need only be observed that "there is no genuine issue as to any material fact . . ." Fed. R. Civ. P. 56(c), 28 U.S.C. App. The only substantial question raised by the pleadings and affidavits was the effect of the agreement of February 9, 1953. The legal effect of that agreement having been decided adversely to the Paiewonskys, the District Court correctly granted the Government's motion for summary judgment.

For the reasons stated the order of the District Court will be affirmed.